## First National Bank's Receiver of London, Kentucky v. Boreing's Administratrix.

(Decided January 19, 1917.)

### Appeal from Laurel Circuit Court.

Bills and Notes—Consideration.—In an action by a bank receiver against the decedent's estate to recover on a note executed by the decedent to the bank, evidence considered and held to show that the note was executed without consideration.

HAZELWOOD & JOHNSON for appellant.

WILLIAMS & JOHNSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The First National Bank of London, Kentucky, brought suit against J. M. Boreing's administratrix to recover on several notes and for a settlement of his estate. Some time thereafter the bank was closed by an order of the comptroller of the currency and placed in the hands of Fred W. Weitzel, receiver, for the purpose of winding up its affairs. About eleven months after his appointment, the receiver presented as a claim against J. M. Boreing's estate a note for $3,260.00, dated November 13th, 1911, and executed by J. M. Boreing to the bank. The claim was referred to the master commissioner of the Laurel circuit court to hear proof and re-

port on its validity. After hearing the evidence the commissioner made the following report: "The commissioner finds from the evidence that the note for $3,262.00, dated November 13th, 1911, No. 2530, signed by J. M. Boreing and filed by the claimant herein, was given without any valuable consideration; that it was made as an accommodation to the First National Bank of London, Kentucky; that J. M. Boreing received nothing for the execution of said note; that same is not a legal claim against the estate of said J. M. Boreing, and it is disallowed." The receiver's exceptions to this report were overruled and the report approved. The receiver appeals.

The facts with reference to the execution of the note in question are as follows: The bank had too much paper of one of its borrowers and was ordered by the comptroller of the currency, or the bank examiner, to reduce the amount of this paper. Thereupon the directors and one outside party executed three notes to the bank for $2,500.00 each. These notes were sent to, and discounted by, a Louisville bank. One of the notes was paid and the amount of the two remaining notes reduced to $3,262.00. When these notes became due they were returned to the First National Bank. At that time Mrs. Catching was engaged in building a home and had on deposit in the bank a sum of money which she was using to pay for the building. Not being in immediate need of her money, she consented for the bank to use it, and the two notes signed by the directors were endorsed to her by the bank, with the distinct understanding, however, that the bank was responsible to her and would furnish her the money on the notes whenever she demanded it. Subsequently Mrs. Catching demanded the money. Not having the money on hand, the bank induced J. M. Boreing to execute the note in question, at the same time assuring him that he would run no risk, as the notes executed by the directors were perfectly good. Upon the execution of the note by Boreing, a portion of the note was placed to the credit of Mrs. Catching. The officers of the bank testified that the notes executed by the directors were supposed to be assigned to Boreing. One of the officers says that the notes were on the desk at the time and his recollction was that Boreing told Mr. Fitzgerald, the cashier, just to hold them, and Mr. Fitzgerald held the notes, or they were left in the bank.

Catching, the president of the bank, says that, in the event Boreing had to pay the note of $3,262.00, or any part of it, he was to have as collateral security the notes executed by the directors. It further appears that while Mrs. Catching got the benefit of the Boreing note in a way, the note was executed for the accommodation of the bank. The two notes executed by the directors were executed with no thought of their ever being paid and were not carried as assets of the bank. The J. M. Boreing note was carried as an asset of the bank some time and was then charged off. The witnesses were unable to say that J. M. Boreing knew that his note was executed for the purpose of taking up worthless paper, or that Boreing participated in the fraudulent scheme to increase the assets of the bank.

It will be seen from the foregoing statement of the evidence that the two notes for $2,500.00 executed by the directors were payable to the First National Bank and were discounted by a Louisville bank. When the notes matured the Louisville bank demanded payment. The two notes were transferred to Mrs. Catching with the distinct agreement that they would be taken up and she should be paid her money when she demanded it. When she demanded her money Boreing was persuaded to execute the note in question. Boreing had no dealings whatever with Mrs. Catching. The note which he executed was neither payable to her nor endorsed to her. His transaction was solely with the bank. He was induced to execute the note by the assurance that he would run no risk, as the directors' notes were valid. It is not shown that Boreing gave his note for the purpose of taking up worthless paper held by the bank, or that he was a party to any fraudulent agreement to increase the apparent assets of the bank. While it is true that Mrs. Catching was benefited by the receipt of the proceeds of the Boreing note, the note was not executed for her accommodation. It was executed solely for the accommodation of the bank to enable it to discharge its obligation to Mrs. Catching and Boreing received no part of the proceeds. There is no claim that Boreing purchased the directors' notes. Boreing was merely supposed to hold these notes as collateral security. Even if the notes had been delivered to and held by Boreing for that purpose, they would not have constituted any consideration for the note which he executed. In order to constitute a valid consideration between the parties, the payor must

receive something else than the mere chance of not losing if he be called upon to pay the note. The transaction was neither to the advantage of Boreing nor to the detriment of the bank.  He did not gain anything and the bank did not lose anything.  Clearly, the note was without consideration, and the receiver, who stands in the place of the bank, cannot recover thereon.

Judgment affirmed.