## Simmerman et al. v. National Deposit Bank of Owensboro et al.

## Heavrin v. Same.

(Decided February 11, 1930.)

E. B. ANDERSON and OTTO C. MARTIN, attorneys for appellant, M. L. Heavrin.

J. S. GLENN and C. J. WADDELL, attorneys for appellants, R. E. Lee Simmerman, Jessie R. Simmerman and J. W. Ford.

LOUIS I. IGLEHEART, attorney for the appellee, National Deposit Bank of Owensboro, Kentucky.

GLOVER H. CARY, attorney for the appellee, State Banking Commissioner, C. E. Marvin.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

In November, 1925, the state bank examiner examined the Bank of Hartford and informed Rowan Holbrook, its vice president and chief managing agent, that its reserve was below the legal requirements and that certain loans should be reduced. J. W. Ford was the president of the bank and a large stockholder. He was 83 years old and in bad health. R. Lee Simmerman, his son-in-law, was also a stockholder, one of the directors, and the salaried attorney of the bank. He and his wife, Mrs. Jessie R. Simmerman, who was the daughter of Judge Ford, lived with him. Rowan Holbrook, after the examiner left, went to the Ford home and told them the conditions, and, at his suggestion that $20,000 be raised and put to the credit of the bank, they signed that day two notes, each for $10,000, due in 90 days; the notes being blank as to date and as to payee, Holbrook telling them that he would fill in the name of the bank which furnished the

money. Holbrook mailed these notes to the National Deposit Bank of Owensboro, Ky., which was a correspondent of the Hartford bank, asking a loan of $20,000 thereon. On each note the signatures were in this order: Mrs. Jessie R. Simmerman; R. E. Lee Simmerman; James W. Ford; Rowan Holbrook. The Owensboro bank declined to make the loan and returned the notes to Holbrook.

After this he wrote them, insisting on their making the loan, and on December 10 he came to the bank with two notes, dated December 9, 1925, and with his name as payee written in typewriter like the remainder of the notes. He proposed then to the bank that he would give his note for $20,000, due one day after date, and attach to it as collateral security the two notes, each for $10,000, if the bank would lend the $20,000 and place it to the credit of the Hartford bank. He informed the Owensboro bank that he had to increase the reserve of his bank to satisfy the state bank examiner, and stated that he would let the money remain there. The Owensboro bank, under its arrangement with the Hartford bank, allowed it 3 per cent. on all deposits. The directors of the Owensboro bank hesitated to make the loan. Finally, while they were talking the matter over, some one suggested that M. L. Heavrin was in Owensboro. Mr. Heavrin lived at Hartford, was a stockholder in the bank, a well-known attorney, and a man of means. He had left home that morning on his way to Florida, but had stopped in Owensboro to see his brother. They telephoned to him, and he came down to the Owensboro bank. They showed him the two notes, each for $10,000, and asked him if they were good. He said that he knew the parties very well and that the notes were absolutely good. They then asked him if he would sign the $20,000 note which Rowan Holbrook had agreed to give, with the two $10,000 notes attached as collateral. He said that Holbrook was good, and he would sign his note. Thereupon the papers were drawn up and signed. The bank gave its check to Rowan Holbrook for $20,000, and Holbrook indorsed the check to the Bank of Hartford and had the $20,000 placed to its credit.

Thus things ran along until March 9, 1926, when the Bank of Hartford was closed. The banking commissioner demanded of the Owensboro bank that it pay to him the amount of the deposit on its books to the credit of the

Hartford bank, and the Owensboro bank paid the money to the commissioner, amounting to $20,475, which included the interest on the fund at 3 per cent. and a small balance to the credit of the Hartford bank. After this the president of the Owensboro bank came to Hartford to see about its debt of $20,000. He had an interview with Judge Ford and Mr. and Mrs. Simmerman, in which she says he asked her to execute a mortgage to secure the note, saying that the mortgage would not affect in any way her liability. He says he did not say anything of this kind. Judge Glenn was Mr. Simmerman's partner. Some days after this Judge Glenn prepared a deed of trust, which was signed by Simmerman and his wife, conveying certain property of Mrs. Simmerman in trust for the payment of the debt. Judge Glenn evidently prepared this paper at the suggestion of Mr. Simmerman, or his wife, and in their interest, and this paper set out all the facts, as above stated. It was signed and acknowledged by Simmerman and wife and sent to the bank. The bank refused to accept it, and thereupon the bank, about the middle of April, had a mortgage prepared, which in like manner set out all the facts and mortgaged a large tract of land belonging to Mrs. Simmerman for the payment of the debt; the time for payment being extended until December 1, 1926. Simmerman and wife signed and acknowledged this mortgage and it was duly recorded. They and Heavrin, at the same time, also signed a written agreement for the extension of the time for the payment of the note until December 1, 1928. The notes were not paid then, and the bank brought this suit to recover judgment on the two $10,000 notes and to enforce the lien of the mortgage.

Mrs. Simmerman pleaded in substance that she was a married woman and only a surety in the notes, and that she set apart no part of her estate by mortgage to secure the notes. She also pleaded that the notes were filled out to Holbrook by Holbrook himself without authority, and that the Owensboro bank had notice of this. She pleaded that the money was borrowed with the express agreement that it should remain on deposit in the Owensboro bank and should be applied only to the payment of the notes. She further pleaded that the mortgage was obtained from her by fraud and misrepresentation. Heavrin came into the case, and she asserted that her notes were only collateral to the note which Heavrin signed, and that Heavrin should be made to pay the debt before anything

should be collected of her. On the other hand, Heavrin claimed that he was only the surety of Holbrook on Holbrook's note, and that the collateral should be exhausted before he should be required to pay anything. Mrs. Simmerman also made her answer a cross-petition against the banking commissioner and prayed judgment against him for the $20,000, which he had collected from the Owensboro bank, alleging it was a trust fund to meet the notes, and she also made the Hartford bank a defendant, and prayed judgment against that bank.

The circuit court held the notes and mortgage valid; that Heavrin was only a surety in the transaction, and could not be compelled to pay anything until Mrs. Simmerman's property was exhausted. He gave judgment for the sale of the property, and dismissed her petition against the banking commissioner and the Hartford bank. She appeals. M. L. Heavrin also appealls, insisting that the plaintiff's petition should have been dismissed as to him, on the ground that the time for payment had been extended without his consent, and that he had no notice of the nonpayment of the note at maturity.

It is not easy to see that Mrs. Simmerman was surety for anybody on the note. She, her husband, her father, and Holbrook were all stockholders in the bank and interested in its success. The bank reserve had to be increased. They executed the notes with the intention of borrowing the $20,000 from some bank and adding this to the reserve of the Bank of Hartford. Her name was not only the first signature, but plainly they were all four equally obligors in the notes. A wife may make contracts as a single woman, and she may borrow money for the use of another. Longnecker v. Bondurant, 173 Ky. 432, 191 S. W. 286; Farmers' Bank v. Williams, 205 Ky. 261, 265 S. W. 771; Scott v. First Nat'l Bank, 221 Ky. 297, 298 S. W. 949. It is not clear under the evidence that Holbrook was without authority to fill out the notes as he did, and certainly the bank had no notice of any want of authority in him. In fact, what he did at the bank was the very thing that the notes were executed to secure. The defense that the money was borrowed with the express agreement that it should remain on deposit in the Owensboro bank, and should be only applied to the payment of the notes, is not only against the numerical weight of the evidence, but is clearly inconsistent with the purpose of the transaction. If the money could not be applied to maintain the reserve of the Bank of Hartford,

there was no use in the arrangement; for the whole purpose was to increase this reserve. The money was in fact placed to the credit of the Bank of Hartford, and any agreement that it should not be checked out by the bank would have been a fraud upon the state authorities; for, unless that was the fact, the money would not in substance belong to the bank and was not a part of its reserve.

The mortgage was not obtained from Mrs. Simmerman by any fraudulent representation. The fact is the mortgage was not executed for nearly a month after the agent of the Owensboro bank had the talk with her and her husband, who was a lawyer of years of experience. After this talk her husband's partner, Judge Glenn, evidently after consulting with her husband, wrote the deed of trust, which set out all the facts, and when the bank would not accept the deed of trust she and her husband signed the mortgage without any representations from the bank as to any contract not stated in the writing. The purpose of all this was to get six months' time to pay the debt. By this mortgage she had set apart the property named therein for the payment of the debt, and by making this arrangement she secured six months' time to pay the debt. This was all done after she and her husband and his partner, Judge Glenn, had full opportunity to learn all the facts and be fully advised as to their rights. The new contract was based upon a valuable consideration, and was a waiver of all objections to what had occurred before, when all these things were set out in the new contract, and were well known by the parties at the time it was executed.

Heavrin was not a party in any way to the original plan to raise the $20,000. He simply happened to be in Owensboro on the day when Holbrook was there to close the transaction. When he was sent for, and told the Owensboro bankers that the notes were perfectly good, naturally they asked him to show the sincerity of his representation by signing the note of Holbrook for $20,000. He signed the paper at the request of the Owensboro people, simply as a surety. Holbrook was primarily liable on the note, and the two $10,000 notes were collateral to Holbrook's note. The circuit court, therefore, properly held that Heavrin could not be held liable to Mrs. Simmerman for anything she paid on the notes.

In cases like this, turning on the facts, the court gives some weight to the finding of the chancellor, and

does not disturb his findings on the facts, where the mind is left in doubt as to the truth. Here it seems to the court that the weight of the evidence sustains the chancellor's finding on the above matters.

Heavrin insists that he was not liable at all. He cannot complain that six months' time was given on the note, because he signed a written agreement to this effect.

He was an obligor in the $20,000 note, and was not released when the bank gave him no notice that the note was not paid at maturity. Only an indorser is released by failure to give notice of dishonor. The note was due one day after date, and plainly the parties did not expect it to be paid at maturity, but expected the arrangement to run over for some time.

As the money was placed in the Owensboro bank to the credit of the Bank of Hartford, it was properly paid over by the Owensboro bank to the banking commissioner when the Hartford Bank closed, for it was a part of the assets of the bank, and the Owensboro bank was without any authority to withhold this money from the banking commissioner. It had been secured to increase the reserve of the bank.

Holbrook, on his return to the Bank of Hartford, credited the cash account with the $20,000 deposited with the Owensboro bank, and then to make his books balance charged off $8,000 of loans to his son and, as he says, $12,000 of loans to R. E. Lee Simmerman, but the items he gives seem to foot up only $10,500. It is insisted that the loan was obtained to pay these loans, and thus reduce excessive loans made by the bank. But the proof does not satisfactorily show that any such use of the funds was understood when Mrs. Simmerman, her husband, and her father signed the notes to enable Holbrook to raise $20,000 for the bank; and this question may not be properly tried in this case, where all the parties interested are not before the court. The Bank of Hartford was a party in no way to the transaction by which the money was borrowed from the Owensboro bank. The money was borrowed by Holbrook and placed by him to the credit of the Bank of Hartford, to build up its reserve, so it could continue in business. If the bank owed the $20,000, and this had appeared, the bank could not have continued in business. The sole purpose of the transaction was to so frame it as not to disclose a liability of the bank. All the parties well understood

this then. The court could not have entered a judgment that the $20,000 paid by the Owensboro bank to the banking commissioner be paid back by him to the Owensboro bank and applied to the payment of the notes sued on by it, for the reasons above stated, and this is the relief Mrs. Simmerman really sought in her cross-petition against the Hartford bank. She expressly prayed no other relief against the Hartford bank, and, while her answer is made a cross-petition against the Hartford bank, asking the relief above indicated, there is no showing that the Hartford bank was ever brought before the court on the cross-petition or filed any answer to it. Though she may have a claim against the Bank of Hartford for money had and received, this she may assert against it in the receiver's proceeding, and her rights as against other creditors or stockholders may more appropriately be determined in that action, where all may be heard.

Judgment affirmed.