## Elswick et al. v. Sword, Special Deputy Banking Commissioner, et al.

(Decided March 28, 1930.)

TURNER & CREAL and JOHNSON & HINTON for appellants.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Affirming.

On September 28, 1924, the First State Bank of Elkhorn City, located at Praise, Pike county, sued R. T. Elswick, G. B. Long, Alex H. Long, and Gallie Friend on their note for $1,272.02, dated March 17, 1921, and due four months thereafter. No steps were taken in the case until December 21, 1927, when Rush Sword, as special deputy banking commissioner and liquidating agent

of the bank, filed his intervening petition alleging that since the filing of the suit the plaintiff bank had been placed in his hands for liquidation. He was thereupon made a party plaintiff.

On July 2, 1928, the defendants, except Friend, filed answer pleading no consideration, stating that they were directors of the bank, and that the note had been executed for the purpose of securing and indemnifying the depositors against loss by reason of certain notes of doubtful value held by the bank, which notes had been acquired by it before they became directors. They also claimed credit for an unknown but material sum which had been realized on the notes. By a subsequent amended petition a credit of $750 was given.

At the conclusion of the evidence the court directed a verdict for the plaintiffs.

It appears from the evidence that in January, 1916, the bank held $2,556 of notes of doubtful value, and, on demand of the bank examiner that the impairment of capital by reason thereof should be restored, these four gentlemen and two others borrowed $2,500 from a bank at Pikeville, which was turned over to the First State Bank, and the doubtful notes were by resolution of its board of directors assigned and transferred, without recourse, to one of these men as trustee for himself and the others, with the right to pursue the collection in the name of the bank, but without any liability on it whatever. Some time afterward two of the original group satisfied in full their portion of the indebtedness to the Pikeville Bank, and some of the other four paid a part of their share. The proceeds of a $1,000 note given to the First State Bank were used to pay the balance of the original note given the Pikeville Bank, and the note sued on is a renewal of that $1,000 note and accumulated interest.

The appellants seek to escape liability on the ground that they obtained no benefit from the transaction as they were not liable for the taking of the doubtful notes which had impaired the bank's capital, since they were not at the time directors of the bank; and also that the assignment to them was never delivered and was, therefore, of no effect.

As to the latter claim, it is sufficient to say that the evidence is conclusive that there was a constructive delivery, if not an actual one. The attorney, in whose hands the assigned notes were placed for collection,

650

stated they were turned over to him by these gentlemen and he consulted them with reference to a compromise settlement of the judgment obtained on the notes, but whether it was in their capacity as officers of the bank or as individuals he could not say.

There are certain obligations resting upon directors of a bank, which evidently these gentlemen appreciated when they restored the impairment in the capital of their bank. Compare First National Bank v. Doherty, 156 Ky. 386, 161 S. W. 211; and Simmerman v. National Deposit Bank, 232 Ky. 844, 24 S. W. (2d) 912. But the decision of this case need not be rested on the sufficiency or insufficiency of that responsibility as a consideration, for the original transaction was simply a sale and purchase of the notes considered to be of questionable value. The note sued on was given in renewal of one for which cash was received by the payors.

Nor is there any merit in the claim that liability is not to be fixed until it is definitely ascertained that the depositors of the bank will not be paid in full. The deputy banking commissioner testified that it is possible the depositors will ultimately receive about 90 per cent. of their claims. We do not think that has any sort of bearing on the case.

The judgment is affirmed.