# Heath et al. v. Turner, Special Deputy Banking and Securities Commissioner.

(Decided Dec. 11, 1934.)

·J. J. KAVANAUGH for appellants.

J. WIRT TURNER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On April 25, 1933, the. Peoples Bank of Sulphur, Ky., a state banking institution, was, by order of its board of directors, closed, and its affairs placed in the hands of the banking and securities commissioner of the state of Kentucky. Thereafter, J. Wirt Turner was duly appointed and qualified as special deputy banking commissioner and liquidating agent to liquidate the bank, and as such instituted an action against G. P. Heath, seeking to recover on a promissory note for $1,000 dated May 26, 1932, which the latter executed and delivered to the bank, the note bearing interest after maturity.

By answer, defendant admitted the execution of the note and that no part thereof had been paid. In a second paragraph he alleged that on or about May 26, 1930, the banking and securities commissioner notified the bank of a depreciation in its funds and the impairment of its capital stock; that, in order to maintain the capital stock unimpaired, defendant, without receiving any value and for the purpose of lending his name to the bank, executed a note for the principal sum of $1,000 and delivered same to the bank during August or September, 1930; that the note was subsequently renewed on May 26, 1931, and again on May 26, 1932; that he executed the original and subsequent renewals to the bank solely as an accommodation to it without receiving any value or benefit from the bank. In a third para-

graph he further alleged that on or about June 17, 1930, and before delivery of the original note to the bank, it was agreed and understood by defendant and the bank that, in case of voluntary or involuntary liquidation of the bank or of its closing, there would be no requirement of defendant to pay the note until the bank's surplus, undivided profits, capital stock, and double liability had been first exhausted, and that upon the renewal of the note that agreement and understanding was renewed and reaffirmed between the parties; and that the agreement was reduced to writing and spread upon the minute book of the bank at a special meeting of its board of directors held June 7, 1932. He further alleged that at no time prior to the institution of this action, or at any time mentioned in the pleading, had the bank's surplus, undivided profits, capital stock, or double liability assessment been exhausted, and that no suit had been instituted by the banking commissioner or his deputy in charge of the bank against the stockholders of the bank to collect or assess any double liability against the stockholders.

By reply, plaintiff alleged that on May 26, 1930, and prior to and thereafter until it was closed, defendant was a director and stockholder in the bank; that, at the time of the execution of the original note, the banking commissioner had demanded that the capital structure of the bank be made whole because it had become impaired by reason of depreciation in and loss of assets, and threatened to close the bank unless the officers and stockholders would put sufficient funds in the institution to bring its capital stock to par; that defendant, being an owner of stock and believing that he would have to pay double liability and would lose the stock he owned if the bank should be closed, together with other officers, stockholders, and directors of the bank, executed and delivered the notes to the bank to be used as assets of the institution, thereby preventing it from closing; that the original notes and the renewals thereof were placed in the bank as assets and reported to the banking department as such in each annual report made by the bank and at each and every examination of the bank made by the banking commissioner; that, but for the execution of the notes, the banking commissioner would have closed the bank at the time they were executed. Plaintiff denied that the note was executed solely as an accommodation to the bank or without benefit or value to defendant, and alleged that defendant received the

benefit of keeping the bank open and giving the opportunity to make good its losses; that the depositors and other creditors of the bank dealt and deposited funds with it on the faith and belief that defendant's note and other notes executed by the stockholders and directors were good and valid obligations of the bank. Plaintiff further alleged that, after the execution of the original note and before the execution of the renewals, the bank was closed upon demand of the banking commissioner because the capital stock had become impaired with the notes sued on as a part of its assets, and that defendant with other directors and stockholders put up cash and other securities to be used as assets of the bank in an amount sufficient to make up the impairment of the capital stock, and thereupon the banking commissioner permitted the bank to reopen for business. It is further alleged in the reply that the liabilities of the bank amount to $71,000, and that not more than $60,000 could be realized from its assets, including defendant's note and the notes of other officers and directors of the bank, and including the undivided profits, capital stock, surplus, and double liability of stockholders.

By rejoinder, defendant traversed the affirmative allegations of the reply.

The cause having been submitted on a demurrer to the reply, it was adjudged by the court that the demurrer relate back and be sustained as to the answer, and defendant was given time to further plead.

Thereafter, an amended answer was filed reiterating the allegations of the original answer as to the way and manner and the purpose for which the note and renewals were executed and the agreement and understanding relative thereto. It was further alleged that on or about May 26, 1930, O. S. Denny, as banking commissioner, notified the Peoples Bank of Sulphur of an alleged threatened depreciation in the bond account of the bank, and, in order to maintain unimpaired the bond account and without receiving any value and for the purpose of lending his name to the bank, he executed the note and the renewals thereof and delivered same to the bank; that, at the time the original note was executed and delivered, the capital stock of the bank was unimpaired, and that it had a surplus account of $10,000; that the banking commissioner at no time notified defendant of any impairment of the capital stock, and that, at all times mentioned in the pleading, the bank

was, to the best knowledge and belief of defendant, in a solvent condition; that, prior to the delivery of the note sued on, the cashier of the bank notified O. S. Denny, banking commissioner, of the agreement between the bank and the defendant concerning the note, and that the banking commissioner agreed, permitted, and allowed the note to be executed and delivered to the bank with the stipulation and condition evidenced by the minute book of the directors' meeting held June 7, 1930. That on November 22, 1930, E. H. Short, bank examiner, by letter notified the banking commissioner of the note and of the meeting of the directors concerning it, and on December 23, 1930, W. A. Dicken, the banking commissioner of the state of Kentucky, was present at a call meeting of the board of directors of the bank and examined the notes as previously described and approved, and ratified same with their attending conditions. The amended answer further set out the statute with respect to the examinations of the banks under the supervision of the banking commissioner, and alleged that examinations were made from time to time as provided by law until the bank was finally closed; that the succeeding banking commissioners, including J. R. Dorman, the present commissioner, caused the bank to be examined, and from the examination learned of the notes and their conditions, and approved and ratified the renewals thereof; that the agreement entered into between O. S. Denny, the Peoples Bank of Sulphur, and defendant concerning the note and with its stipulation as of June 7, 1930, ratified as above described, provided that the note should not be sued on until all resources of the bank were exhausted; that the resources of the bank were not exhausted at the time of the institution of this action, and that the institution of this action is an invasion and destruction of the contractual and property rights of defendant.

By agreement of parties, separate actions by plaintiff against A. J. Rowlett, Kirby Fewell, J. L. Starks, and Henry Norvelle on notes for a like amount given under the same terms and conditions and for the same purpose were consolidated with this action, and that the answer and other pleadings and the judgment and orders be binding on all parties in the consolidated cases.

A demurrer to the answer as amended was sustained, and defendant declining to further plead, the answer as amended was dismissed, and it was adjudged

that plaintiff recover of G. P. Heath and each of the other defendants in the consolidated actions the sum of $1,000, with interest from May 26, 1933, and from that judgment this appeal is prosecuted.

It is first argued by counsel for appellants that the court should have sustained the demurrer to appellee's reply because it failed to deny material allegations of the answer with respect (1) to the agreement between the bank and the note makers made with the approval of the commissioners and (2) the prematurity of the action.

The notes in question, as shown by the pleadings, were executed to make good an impairment in the bank's capital. In the original answer it is alleged that the notes were executed to make good an impairment of the bank's capital, and in the amended answer that they were executed to make good an impairment in its bond account which amounts to the same thing if the bank's assets including capital and surplus were thereby reduced to such an extent as to not be sufficient to meet all its liabilities.

Notwithstanding banks are organized and operated by individuals for private gain, they are in a sense public institutions, since they are depositories of the money of the country, and therefore are legitimate and proper subjects of police regulation to preserve and safeguard their solvency. Cartmell v. Commercial Bank & Trust Co., 153 Ky. 798, 156 S. W. 1048; American Southern Nat. Bank v. Smith, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959. The capital stock of a bank is in the nature of a trust fund for the protection and benefit of its depositors and creditors. It is therefore highly important that such fund be kept unimpaired. 3 R. C. L. 387.

In Dorman, Banking Commissioner, v. Dell et al., 245 Ky. 34, 52 S. W. (2d) 892, one of the cases cited by counsel for appellants, it is said in effect that, in the performance of his duties with relation to insolvent banks as directed by statute, the banking commissioner must protect the interest of the depositors.

The Legislature, in the exercise of the police power of the state, has, in an attempt to safeguard the solvency of banks organized under the state banking laws, enacted regulatory measures, included in which is the requirement that the bank submit to periodical examina-

tion into the condition of its affairs by representatives of the state banking department, and that its officers make periodical statements under oath setting forth in detail its assets and liabilities that the public as well as the banking department may be kept informed as to the condition of such banks. It is required that these sworn statements be published in a newspaper of general circulation in the community in which the reporting bank is engaged in business. Because of the notes executed by Heath and other officers and directors, the bank was permitted to continue business for nearly 3 years and by published reports to hold itself out to the public as solvent. Regardless of the equities between the other stockholders of the bank and the makers of the notes, and the effect of the agreement as between them, a matter which it is unnecessary for us to determine, the agreement could not and did not operate to thwart and nullify the policy of the law to the prejudice of the creditors and depositors. They were entitled to have the capital stock remain unimpaired, and it was to this end that the notes were executed. The fact that the banking commissioner may have approved the notes with knowledge of the alleged agreement as to the condition upon which they were executed did not lend any effect to the agreement so far as the interests of the creditors and depositors are concerned. It therefore follows that the alleged agreement is unavailable as a defense in an action of this character.

That the action is not premature and the liability not fixed until it is definitely ascertained that the depositors and creditors will not be paid in full is directly determined in the case of Elswick v. Sword et al., 233 Ky. 648, 26 S. W. (2d) 556, 557.

It is further insisted by counsel for appellants that the demurrer to the answer as amended should have been overruled because of the plea of no consideration and the further plea that it is an accommodation note. A number of cases are cited in support of this proposition, and ordinarily such pleas are good on demurrer, but not so in this instance. Appellant and others executing the notes involved were directors, officers, and stockholders of the bank, and as said in the Elswick Case, supra:

"There are certain obligations resting upon directors of a bank, which evidently these gentlemen ap-

preciated when they restored the impairment in the capital of their bank. [Citing cases.]''

At the time the original notes were executed, the makers who were stockholders in the bank were faced with the threatened closing and liquidation of the institution because of impairment of its capital with a possibility, not only of loss of their investment, but also of assessment of double liability under the statute. In consideration of the forbearance of the banking commissioner to take such action, and in order that the bank might be enabled to continue business and by earnings or by appreciation in its assets make good its losses or at least stay the day of reckoning upon part of the stockholders, the notes were executed. It certainly would require no further elaboration or statement of facts to demonstrate that the notes were not without consideration, and that they were not in fact accommodation notes. The recital of the facts and circumstances attending the execution of these notes in appellants' answer refutes these pleas.

The case of First National Bank's Receiver v. Boreing's Adm'x, 173 Ky. 327, 190 S. W. 1106, cited and relied on by counsel for appellants, does not sustain his contention, since, as pointed out in that case, the maker of the notes did not gain any benefit nor did the bank lose anything by its execution.

Judgment affirmed.