PARKER *v.* PARKER.

1. BANKS AND BANKING—CREDITORS—TRUSTEES OF SEGREGATED ASSETS—COUNTERCLAIM.

In suit by administratrix of estate of one who had been president, a director, and active officer of a bank, and later its conservator, against trustees of segregated assets of the bank to collect amount deceased had on deposit and compensation for services as conservator, finding of trial court that there were no creditors of the bank so far as the segregated assets were concerned

*held*, erroneous where function of trustees was to liquidate the assets to pay depositors and such assets were insufficient to do so, hence defendants should be allowed to interpose a counterclaim, based upon a note signed by deceased, which note plaintiff claimed was one on which the estate was not liable because without consideration and used by the bank in deceiving the State banking commissioner, as creditors of the bank, including depositors, were materially concerned in determining whether such note was a valid and collectible obligation in the hands of defendant trustees.

2. Same—Substitution of Assets—Enforceability of Note.

Substitution of note, signed by president of bank who was a director and active officer, in lieu of another asset of which the State banking commissioner had been complaining is presumed to have been, at least in part, the reason why bank was permitted to continue in operation, hence such note, now in hands of trustees of segregated assets, may not be held unenforceable merely because board of directors of the bank were fully aware of deceased's claimed participation as trustee for bank in connection with the deception practiced as to the commissioner.

3. Bills and Notes—Defenses—Public Policy—Estoppel—Deception of State Banking Commissioner.

A defense to counterclaim based on a note that it was given to replace questionable assets in a bank for the purpose of deceiving the State banking commissioner is contrary to law and public policy and the maker is estopped from denying liability on the ground of its fictitious character.

4. Same—Presumption of Consideration—Defense Based on Illegal Contract.

A plea of an illegal contract not to hold the maker of a note does not overcome the presumption that the note was given for a valuable consideration.

5. Banks and Banking—Bills and Notes—Secret Collusive Agreement with Maker—Varying Terms of Note.

Since every depositor has the right to rely on the notes of a bank as legal, binding, and valid, any secret collusive agreement between the maker and a bank officer that the bank will not hold the maker liable is invalid, null and void and, in addition, it varies, qualifies, contradicts, adds to, or subtracts from, the written terms of the contract as evidenced by the note.

6. SAME—CREDITORS—IMPAIRMENT OF CAPITAL—COLLUSIVE AGREE-
MENT WITH MAKER OF NOTE.

Since a bank's creditors are entitled to have its capital remain
unimpaired any attempt to replace undesirable assets with a
note coupled with an agreement that the maker is not to be
liable thereon will not be permitted to nullify the purpose of
the law, requiring examination of banks to determine their
condition and publication of reports of their stability for the
benefit of the creditors and the public, to the prejudice of the
bank's creditors.

7. BILLS AND NOTES—DEFENSES—COLLUSIVE AGREEMENT—PUBLIC
POLICY—FRAUD UPON PAYEE BANK'S CREDITORS.

Note which had been signed by president of bank and used to re-
place an asset which had been questioned by the State banking
commissioner *held,* a valid obligation against the estate of the
maker, defense that maker was merely handling such item with-
out personal responsibility being contrary to public policy as
a fraud upon bank's creditors.

8. BANKS AND BANKING—CONSERVATOR—COMPROMISE AND SETTLE-
MENT OF DEBTS—VIOLATION OF COMMISSIONER'S ORDERS.

Claim that deceased conservator of bank in accepting $858.98
from a debtor violated orders of State banking commissioner
and that his estate should be held liable for balance of such
debtor's obligations which had totalled $4,598.32, *held,* not
sustained where such debtor has offered to execute new notes
for the bulk of the debt and the sum received was shown to
have been accepted in full satisfaction of a $1,000 note and
chattel mortgage.

9. COSTS—PARTIAL RECOVERY.

On appeal in suit between administratrix of deceased banker's
estate and trustees of the segregated assets of the bank in
which both parties have advanced claims which have not been
fully sustained, no costs are allowed.

Appeal from Genesee; Black (Edward D.), J.
Submitted October 14, 1938. (Docket No. 57, Calen-
dar No. 40,123.) Decided December 21, 1938.

Bill by Ethel Parker, administratrix of the estate
of Charles D. Parker, deceased, against John A.

Parker, W. M. Crawford and John B. Crawford, as trustees of the segregated assets of the Otisville State Bank, and another for an accounting and other relief. Decree for plaintiff. Defendant trustees appeal. Modified in part and affirmed in part.

*Benjamin Henderson* and *Stockton, Cline & George,* for plaintiff.

*Neithercut & Neithercut,* for defendant trustees.

NORTH, J. Defendants are trustees of the segregated assets of the Otisville State Bank, and as such they represent the bank's unpaid depositors. Plaintiff is executrix of the estate of Charles D. Parker, who died December 11, 1934. Formerly he had been president, a director, and active officer of the Otisville State Bank, and later was appointed conservator of the closed bank. When the bank suspended Charles Parker had a substantial sum on deposit, and for his services as conservator his compensation was fixed at $3,000. Because of the refusal of defendants to pay the administratrix either of these items she brought this suit. Other matters originally involved in the litigation, but which have been settled and therefore need not be detailed, account for plaintiff's proceeding in equity by bill for partition, accounting and general relief. The reason that defendants refuse to pay the items claimed by plaintiff is that they assert certain counterclaims. Plaintiff denies the validity of defendants' claims, thereby giving rise to this suit. In the circuit court plaintiff had decree and defendants have appealed.

When this bank closed because of the bank holiday proclamation on February 14, 1933, among its assets was a promissory note dated October 30, 1932, for $4,847.15, due six months from date, payable to the

bank and signed by Charles D. Parker. This was a renewal note and is part of the bank's segregated assets now held by defendant trustees. The history of this note in brief outline is as follows: In April, 1929, the bank held a second mortgage on a 132-acre farm, title to which was in a Mr. E. E. Munger and wife. This second mortgage for $3,000 was given to the bank by the Mungers to secure the payment of indebtedness to it of a Mr. Coon, who formerly was a director of the bank. After Mr. Coon's death his heirs deeded the farm, subject to a $6,000 first mortgage, to the bank, which in turn deeded to the Mungers. In the trial court this mortgage transaction is referred to as the "Coon loan" and the mortgaged property as the "Coon farm." The Mungers deeded the farm to Christian Metz in February, 1931. As part consideration for this conveyance the bank released the second mortgage which the Mungers had given it on the property and also canceled two of Mungers' notes held by the bank. At the same time there was placed in the bank a so-called "cash item" in Metz' name for $4,545.93, this evidently being in lieu of the amount of the second mortgage, of Mungers' two notes to the bank, and some other items. It should be noted that both Metz and Munger were directors of the bank. On April 2, 1931, Metz and wife deeded the farm to Charles D. Parker and simultaneously the Metz "cash item" was withdrawn from the bank and the original note of Charles D. Parker dated April 8, 1931, in the amount of $4,847.15, was given to the Otisville bank. This note was renewed from time to time, the last renewal being the Parker note for $4,847.15 now in the possession of the defendant trustees.

This note was submitted by the trustees as a claim against the Charles D. Parker estate, and on its

face it purports to be a valid obligation. But it is the claim of the appellee, notwithstanding Charles D. Parker took the record title of the farm in his name, and gave his note to the bank in lieu of other obligations held by the bank as above noted, that this was a mere matter of convenience in handling the transaction for the bank, that Parker took and held title to the farm as a trustee for the bank, and that the board of directors of the bank were fully aware of the true nature of this transaction. We quote the following from appellee's brief:

"The matter of the Munger line out of which grew the Parker note of $4,847.15, had been a sore spot between the Otisville State Bank and the banking department for some time. (See) report and examination of the Otisville State Bank as of October 8, 1930."

Appellee also points out that after Mr. Parker became conservator of the bank the actual status of this so-called Parker note was reported to the State bank examiner, that later Mr. Parker was duly discharged and released as conservator, that his stipulated salary for such service was $3,000, that there is no evidence that the banking department ordered any set-off of this note against the deposit of Mr. Parker in the bank or against his salary as conservator. Under the circumstances appellee contends there was no consideration for the Charles D. Parker note, that the transaction hereinbefore outlined was one carried in Parker's name but only nominally so, that the actual party in interest was the bank, and further that the trustees of the segregated assets are in the same position as the bank itself in so far as the matters in suit are concerned.

We omit other facts disclosed by the record, some of which tend to prove that Charles D. Parker was the actual owner of the farm, in which event his note would be a valid obligation; but on the other hand some of such omitted facts tend to prove appellee's claim that the bank was the actual owner of the farm, that title to this property never vested in Charles D. Parker, and that the Parker note was without consideration. The circuit judge concluded that appellee's contention on this issue of fact was sustained by the record. We quote in part his opinion in review of the factual aspect of the case:

"After Charles Parker, deceased, became conservator, there were statements made by the Otisville State Bank to the banking commissioner that the Coon loan, so-called, had been taken care of, and the report to the banking commissioner, in its place showed the note of something over $4,000 as an asset of the bank which Charles Parker had given in exchange for the deed from Metz of the Coon farm.

"The dealings of the bank throughout do not smack of a very commendable transaction relative to the Coon obligation, and the manner in which the bank had carried it on its books and its conduct relative thereto. It is the claim * * * that the transaction was for the purpose of deceiving the banking commissioner who was complaining of this indebtedness, and for the purpose of showing a financial condition of the bank better than it really was. * * * And later on we have the transfer from Christian Metz to Charles Parker to carry the property in such a manner to continue the deceit on the banking commissioner to show the assets of the bank to be in a better condition, and that the Coon obligation had been properly taken care of. * * * And the bank made its statements of the condition of the bank to the banking commissioner containing the notes of Charles Parker as an asset of the bank,

and that same statement was known by said Charles Parker, that such deception was being a part of the bank's transaction with the banking commissioner. * * *

"The court believes that the statement made by the Otisville State Bank to the banking commissioner at Lansing, Michigan, whereby they had changed the indebtedness of the so-called Coon loan to that of a note of Charles Parker, now deceased, was done for the purpose of deceiving the said banking commissioner. * * *

"The court finds that the testimony discloses that there were no creditors as far as the segregated assets are concerned, which the bank is charging against Charles Parker, deceased; and that no innocent person had suffered. The only one party deceived was the banking commissioner, as the bank never published in any form, by notice in the paper or otherwise, the condition of the Otisville State Bank.

"The court therefore finds * * * (that the title to the Coon farm) was held and intended to be held by said Otisville State Bank and by said Charles Parker as trustee for the bank, for the purpose of deceiving the banking commissioner."

The conclusion finally reached by the circuit judge was that because both the bank and Charles D. Parker were parties to perpetrating fraud upon the banking commissioner, and since no innocent creditors of the bank suffered loss in consequence of such fraud, Parker's obligation evidenced by the note should not be enforced. This conclusion cannot be sustained.

These trustees are possessed of certain segregated assets which it is their duty to liquidate for the purpose of obtaining funds with which to satisfy the claims of unpaid depositors. There are not enough of such assets to pay the depositors in full, hence

it cannot be said there are ''no creditors as far as the segregated assets are concerned,'' or more specifically so far as this Parker note is concerned. Instead the bank's creditors, which include its unpaid depositors, are materially concerned in the determination of whether the Parker note is or is not a valid and collectible obligation in the hands of the trustees. Decision herein must be reached in the light of this situation.

From April, 1931, until the bank closed February 11, 1933, it held the Parker note as one of its substantial assets. It is to be presumed that because of this asset, in part as least, the bank was permitted by the State banking commissioner to continue in business during this period. In the absence of proof establishing such to be the fact, it cannot be said that this course of action on the part of the bank has not resulted to the prejudice and loss of the unpaid depositors of this closed bank, if the note is now to be held unenforceable. Instead the contrary seems apparent.

This record presents a legal aspect which controls disposition of the appeal. A defense that a note was given to replace questionable assets for the purpose of deceiving the State banking department is contrary to law and public policy. The maker of such note is estopped from denying liability on the ground of its fictitious character. 4 Zollmann on Banks and Banking (1st Ed.), p. 516, § 2526. In vol. 7, p. 284, § 4783, that author states:

''A plea of the illegal contract not to hold the maker of the note does not overcome the presumption that the note was given for a valuable consideration. The inevitable effect of such a note is to deceive the bank examiner as to the true condition of the bank and through luring him into a false secu-

rity deceive the creditors themselves. Such an agreement therefore, certainly as to creditors, is void as being against public policy.

"Every depositor has the right to rely on the notes of the bank as legal, binding, and valid, and any secret collusive agreement between the maker and a bank officer that the bank will not hold the maker liable is invalid, null, and void. In addition, it varies, qualifies, contradicts, adds to, or subtracts from, the written terms of the contract as evidenced by the note."

In *Lyons* v. *Benney,* 230 Pa. 117 (79 Atl. 250, 34 L. R. A. [N. S.] 105), defendant executed his note in favor of the bank on an agreement that he would not be liable thereon. This note was to be exhibited to the bank examiner in place of a less desirable asset thereby deceiving the banking authorities. In its opinion, the court said:

"So this appellant was a party to a scheme of the officers of the bank to enable them to make a deceptive and fraudulent showing of assets, and as the fraud was perpetrated upon the creditors, now represented by the bank's receiver he can maintain an action on the note for their benefit. * * *

"In *People's Bank* v. *Stroud,* 223 Pa. 33 (72 Atl. 341) * * * the decision against them (defendants) rested, after all, upon the underlying principle that one who voluntarily gives his obligation to a bank for the purpose of taking up another obligation, and of being exhibited as one of its assets to a supervising officer of the government having supervision and control of its affairs, is estopped to deny want of consideration upon the insolvency of the bank when a receiver brings an action upon the note for the benefit of the creditors of the institution. Neither the law nor good conscience can sanction the contention of the defendant that he ought to be permitted to take advantage of the fraudulent agreement between him and the bank to which its cred-

itors were not parties and for whom the receiver sues.''

Banks are examined to determine their condition, reports of their stability are published for the benefit of the creditors and the public, and any attempt to replace undesirable assets with a note coupled with an agreement that the maker is not to be liable thereon will not be permitted to nullify the purpose of the law to the prejudice of the bank's creditors. They are entitled to have the capital remain unimpaired. It was to this end, in the instant case, that the note was executed and placed among the bank's assets; consequently the defense based on such an agreement is a nullity. *Heath* v. *Turner, Special Deputy Banking & Securities Commissioner*, 256 Ky. 715 (77 S. W. [2d] 9). Courts in various jurisdictions have repeatedly refused to enforce such agreements. On the contrary, they have enforced the obligations as they appeared in the bank's portfolio. *Markville State Bank* v. *Steinbring*, 179 Minn. 246 (228 N. W. 757); *German American State Bank* v. *Watson*, 99 Kan. 686 (163 Pac. 637); *Prudential Trust Co.* v. *Moore*, 245 Mass. 311 (139 N. E. 645); *Skagit State Bank* v. *Moody*, 86 Wash. 286 (150 Pac. 425, L. R. A. 1916A, 1215); *Jewett* v. *Herr*, 86 Ind. App. 392 (156 N. E. 568).

The defense that Charles D. Parker was merely handling this item for the bank without personal responsibility operates as a fraud on the bank's creditors and opens the door for banking practices contrary to the policy of our banking law. On its face the note was valid. It was used to strengthen the bank. Under the circumstances here disclosed the note must be held to be a valid obligation of the Charles D. Parker estate.

The remaining claim which the defendant trustees make against the Charles D. Parker estate concerns

the indebtedness to the bank of one J. M. Moyland. At the time of the bank holiday Moyland was indebted to the Otisville State Bank on two notes, one for $3,598.32 and the other for $1,000. The latter was secured by a chattel mortgage on farm crops. In July, 1934, while Charles D. Parker was serving as conservator of the bank, he advised the State banking commissioner that the bank could obtain $650 as settlement in full of the Moyland indebtedness. The commissioner declined to approve the suggested settlement in full satisfaction of the Moyland notes, and only authorized acceptance of the $650 as payment on account. Moyland did not make the payment. Later (October 15, 1934) the bank received and accepted in full satisfaction of the $1,000 note and chattel mortgage $858.98. This money came from the Federal Land Bank. It is fair to infer from the record that in securing a refinancing farm mortgage loan from the Federal Land Bank, it required Moyland to use the money thus obtained in paying prior mortgage incumbrances, including the Otisville State Bank's chattel mortgage on the farm crops, at a discounted figure.

It is claimed by the defendant trustees that Charles D. Parker, in violation of the order of the State banking commissioner, surrendered both of the Moyland notes, that thereby the bank suffered a loss to the extent of the unpaid principal and interest, and that the estate of Charles D. Parker should be held liable therefor. This contention is based upon the proposition of law that an agent who violates the order of his principal is liable to the principal for a resultant loss. See 1 Mechem on Agency (2d Ed.), p. 912, § 1245. The trial judge found that this claim was not established by the testimony. This holding was correct. It was proven

that after the death of Charles D. Parker these notes were in the possession of the Flushing National Farm Loan Association, this appearing to be the local agency through which loans were secured from the Farm Loan Bank, and by its employees these notes were delivered to Mr. Moyland and his receipt taken therefor. The record shows that Moyland does not claim his note in the larger amount has ever been paid. Instead he has offered in writing to deliver new notes to the bank for this debt, but at a somewhat discounted figure: *i. e.*, $3,500. The trial judge was right in holding that this claim of the trustees was not established. It was not proven that Mr. Parker violated or disregarded any order or direction of the State banking commissioner.

Appellants have presented other questions, but their consideration is not necessary to decision herein. The decree entered in the circuit court in chancery will be vacated and one entered in this court by which it shall be adjudged:

(1) That the Charles D. Parker note is a valid and binding obligation;

(2) That the defendant trustees shall set off the amount due on the Charles D. Parker note against the sums otherwise payable by the bank to the Charles D. Parker estate; and

(3) That the claim of the trustees against the Parker estate arising incident to the Moyland notes is disallowed.

Neither party has fully prevailed in this litigation, and therefore the decree will provide that neither will have costs against the other in either court.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred. BUTZEL, J., did not sit.