## VARDEN v. FIRST CHRISTIAN CHURCH OF PINEVILLE, KY.

District Court, E. D. Kentucky.

Jan. 9, 1936.

Cleon K. Calvert, of Pineville, Ky., for plaintiff.

N. R. Patterson and Logan Patterson, both of Pineville, Ky., for defendant.

FORD, District Judge.

In January, 1932, the Bell National Bank of Pineville, Ky., was placed in the hands of the Comptroller of the Currency for liquidation, and the plaintiff, White F. Varden, was put in charge as its receiver.

Among the assets of the bank which passed to the hands of the receiver was a promissory note executed by the defendant on September 7, 1931, for the principal sum of $4,590. To this note was then attached, as collateral security, two certificates of deposit issued by said bank in the name of Mrs. Sarah E. Moss for the sum of $2,000 each, and one United States government bond for $500. The receiver sold the $500 bond and applied the proceeds to the note. As to that transaction there is no controversy. The balance alleged to be due on this note is the subject of this litigation.

The note sued on is the last in a long series of renewal notes evidencing an indebtedness of the defendant which originated in 1922. On January 27, 1922, the defendant, by its trustees, entered into a contract with Mrs. Sarah E. Moss, one of its members, by the terms of which Mrs. Moss loaned to the defendant $5,000 in United States government bonds to be used by the defendant as collateral security in obtaining funds. Mrs. Moss was secured against loss by a mortgage on the defendant's property. Soon thereafter, the defendant negotiated a loan from said bank of $5,000 for which it executed its promissory note, and as security therefor deposited with the bank the $5,000 in bonds which it had procured from Mrs. Moss. Four of the original bonds deposited were for $1,000 each, and two of them were for $500 each. It appears from the records of the bank that the original note in the sum of $5,000 was renewed from time to time until June 11, 1925, when the principal amount of the debt was reduced to $4,500. This apparently was the result of the application of the proceeds from one of the $500 bonds. Thereafter, the bank records show that Liberty bonds aggregating $4,500 remained attached to the note as collateral security until the year 1928 when a certificate of deposit of said bank, made out in the name of, and bearing indorsement of, Mrs. Sarah E. Moss, was substituted for $2,000 of said bonds. This certificate was issued on November 29, 1927. On July 13, 1931, the bank issued a second certificate of deposit for $2,000 in the name of Mrs. Moss and substituted it as collateral security to this note in the place of $2,000 of the bonds. Thereafter, the note and the securities remained in the condition found by the receiver at the time he took over the affairs of the bank.

By its answer the defendant alleges, in defense of the action, that the bank collected the face value of said bonds, appropriated same to its own use by placing them in its assets, and substituted in the place of said bonds the two certificates of deposit of substantially less value without the knowledge or consent of the defendant or of Mrs. Sarah E. Moss; that the proceeds of said bonds so collected and appropriated by the bank, together with the remaining bond which has since been applied to the debt, was sufficient to pay and satisfy said indebtedness in full. It seeks by counterclaim to have said proceeds credited on the debt as of the date of said collections and the note decreed as canceled and discharged as the result thereof.

On motion of defendant, the case was transferred to equity. The history of the entire transaction disclosed by the records of the bank together with the other evidence is convincing that the bank collected the proceeds from the pledged securities at the time said certificates of deposit were issued, and instead of crediting the same upon the indebtedness it placed the funds in its assets and issued the certificates of deposit, which were substituted as security for the note. These facts being established, the burden of proof shifted to the bank to show that this conversion and substitution of collateral was with the consent and approval of the pledgor or owner of the pledged property, in order to escape responsibility therefor.

Some of the authorities in point are as follows: In 49 C.J. page 992, § 236, it is said: "Upon an issue raised by defendant as to the conversion or loss of collaterals by the pledgee, the burden of proof is on the pledgee to account for them"; again, on page 951, § 107, "If, without consent of the pledgor, the pledgee exchanges collateral for other securities, he is liable for conversion"; again, on page 989, § 228, "Thus the pledgee must produce the collateral or its proceeds or

account for its nonproduction where it is alleged or proved by defendant that the pledgee has realized on the collateral"; and on page 990, § 231, "As a general rule the pledgor defendant is entitled to set off against the amount of the debt any profits or proceeds realized by the pledgee plaintiff from the collateral."

In the case of Skud v. Tillinghast, 195 F. 1 (C.C.A.6th Circuit), the court holds that a pledgee who converts the pledge thereby, in effect, to the extent of its value, discharges the debt.

In the case of Brown v. First National Bank, 132 F. 450, 452 (C.C.A.8th Circuit), in discussing the question of the right of a pledgor against a pledgee on account of unauthorized handling of collateral securities resulting in loss to the pledgor, the court said: "His claim for damages was not only an affirmative cause of action against the bank, but it also constituted, at his option, a good reason why the bank was not entitled to recover upon the note, a good defense of payment of the note to the action upon it."

In 21 R.C.L. page 676, § 38, the rule is stated thus: "A pledgor has an election of remedies against the pledgee for converting the pledge. He may maintain trover or assumpsit, or may, when sued by the pledgee on the debt, set off the value of the property converted."

And on page 686 of the same authority, § 47, it is again stated: "* * * It is generally held that the defendant may set up a wrongful conversion of the pledge or any loss occasioned by the negligence of the pledgee by way of a defense."

In the case of Roberts v. Farmers' Bank, 118 Ky. 80, 80 S.W. 441, 442, the court clearly evidenced approval of the rule that a pledgee who wrongfully converts to his own use the proceeds of securities held by him as collateral "is chargeable with the face of such collateral securities as in payment and discharge of the principal debt."

In the case of Kinnaird, Guardian, v. Dudderrar Brothers, 54 S.W. 847, 848, 21 Ky. Law Rep. 1230, the court said:

"If, on the other hand, the agreement was that appellant should sell the wheat, and apply the proceeds to the payment of the debt, * * * he is chargeable with all that he realized from the wheat, or should have realized by the exercise of that skill and diligence that men of ordinary prudence usually exercise in like matters."

In the face of these authorities, the claimed analogy, insisted upon by the plaintiff, in the position of the owner of securities pledged for the debt of another and that of an ordinary surety, seems of no consequence here. Obviously a creditor-pledgee who converts and appropriates pledged property of a surety in an unauthorized manner and without his consent could not escape responsibility therefor.

The burden of proof resting upon the bank is not supported by the evidence.

The receiver stands in no better position than the bank. He cannot lawfully recover, for the use of the bank's stockholders or creditors, a demand which in equity and good conscience ought not be enforced against another. Skud v. Tillinghast, supra; Rankin v. City National Bank, 208 U.S. 541, 28 S.Ct. 346, 52 L.Ed. 610.

I am of the opinion that the indebtedness of $4,500 is entitled to be credited by the sum of $2,000, on account of proceeds from collateral security received by the bank as of November 29, 1927, the date of the first certificate of deposit, which was substituted for the bonds, and for the same reason, by the further sum of $2,000 as of July 13, 1931, the date of the second certificate of deposit. If, after making these credits, as of said dates, there remains a balance due, after applying to the debt the proceeds of the $500 bond sold by the trustee, and any other payments made thereon by the defendant, the bank is entitled to recover such balance; otherwise, the decree should be for the defendant.

Let the decree be entered accordingly.