## DEITRICK v. GREANEY et al.
## No. 4111.

District Court, D. Massachusetts.
June 16, 1938.

Brenton K. Fisk, of Aldridge & Fisk, all of Boston, Mass., for plaintiff.

Daniel J. Gallagher, of Boston, Mass., for defendants.

Louis G. Stone, of Boston, Mass., for defendant Karnow.

SWEENEY, District Judge.

This is a suit in equity brought by the receiver of the Boston-Continental National Bank to enforce a stock assessment on 457.2 shares of stock of the bank, against these defendants, individually and jointly, and against the defendants Greaney and Karnow, to enforce the payment with interest of a note signed by defendant Greaney in the sum of $14,553.66.

For the purpose of clarity, the Boston National Bank will hereinafter be referred to as the Boston, the Continental National Bank will be referred to as the Continental, and the consolidated Boston-Continental National Bank will be referred to as the Boston-Continental.

Early in 1930, the Boston found itself in a position where it was the owner of 190 shares of its own stock. This ownership came about by the purchase of the stock from one of its directors who threatened to dump it on the open market. Fearing the result of such action, the bank took the stock over, and carried it as a cash item. Such ownership was in violation of the National Banking Act, 12 U.S.C.A. § 83. In order to conceal this illegal ownership, a scheme was devised whereby the note of some third person would be carried on the bank's books as a receivable, and the stock would be carried on the records either in the name of that

third person, or in someone's name other than the bank.

The defendant Greaney was a director of the Boston, and after conference with one Ulin, who was president of the bank, he prevailed upon the defendant Karnow to execute a note in the sum of $23,500 as an accommodation to the bank. Karnow was a small depositor in the Boston, and never intended to pay the note or become a purchaser of its stock, or to do anything other than to accommodate the bank, probably in the hope that in a pinch the bank would return the favor.

Karnow's note was discounted by the bank, and he received from it a check in the sum of $23,203.14. In accordance with the agreement between the parties, Karnow deposited this check in another bank to the credit of the defendant Greaney. Greaney issued his check drawing against this sum, and paid the money to the Boston. The shares were then transferred on the books of the bank to the defendant Greaney.

When the Karnow note became due he was prevailed upon to renew it, which he did against his better judgment. Shortly thereafter he caused the stock to be transferred on the bank's records from Greaney's name to his own, and took actual possession of the certificates. I find that even at this time he did not intend to become a purchaser of the bank's stock, but merely took the certificates as security. From this time on, Karnow repeatedly made efforts to have his liability on the note cancelled, but, between Ulin and Greaney, he was prevailed upon to make several renewals of the original note.

In September of 1930, a consolidation was proposed by the officers of the Continental whereby the Boston-Continental would be formed. Ragan and Balter were the guiding geniuses of the Continental, and were the originators of the proposed consolidation. Ragan intended to have control of the consolidated bank, and, for that purpose, was in the market for shares of the old Boston. A purchase price was agreed on between the Boston and Ragan for the purchase of the shares here involved at $150 a share. Not having the ready money to consummate the deal, Ragan and Balter issued a series of notes, and delivered them to the bank. The bank then turned three of the notes, aggregating $24,000, over to Greaney with instructions that when they were collected, the stock now standing in Karnow's name, was to be transferred to Ragan and Balter. Greaney was to secure the release of such shares from Karnow as were needed to cover any payments made by Ragan and Balter on their notes which were held by Greaney.

In December of 1932, the consolidation was effected, and Ragan became the president of the Boston-Continental. Under the plan of consolidation, the 190 shares of Boston stock, standing in the name of Karnow, become convertible into 684 shares of the new stock. In March of 1931, the first Ragan and Balter note became due and was paid. This was in the sum of $9,500, and on receiving payment Greaney surrendered one of the notes in that same amount, and Karnow released the requisite amount of stock. On the books of the bank Karnow was credited with the payment of $9,500 on his note.

Karnow found that his participation in this transaction, and the effect of having his note outstanding in the bank was reflecting on his credit in his individual business. Becoming more insistent, he prevailed upon the now consolidated bank to release him from liability on the note, which was done. Greaney substituted his note to the bank in the sum of $14,553.66. When the Greaney note was discounted the bank's check was used to discharge the Karnow note. So far as it is pertinent to the issues, I find that it was agreed between Ragan and Greaney that the latter should hold the stock turned over by Karnow on the same terms as Karnow had held it. Greaney, however, did not carry the stock in his own name, but registered it in the name of R. D. Mahoney, the third defendant here. For all intents and purposes, notwithstanding the agreement between the bank and Greaney to the effect that he was to stand in Karnow's shoes, Greaney became the owner of this stock at this time, although he caused it to be registered in the name of Mahoney. He did this without Mahoney's knowledge or consent, and Mahoney was never informed of this fact or of anything about this transaction. received no dividends, and, in fact, knew nothing of it until suit was instituted by the plaintiff.

On December 22, 1931, the Boston-Continental closed its doors, and a receiver was appointed to administer its affairs. On July 11, 1932, the Comptroller of the Currency made an assessment against all owners of shares in the bank in an amount equal to the par value of their shares in accordance with Section 5151 of the Revised Statutes of the United States, 12 U.S.C.A. § 63, and

due demand was made for payment thereof. The assessment on the 457.2 shares here involved has never been paid.

I find and rule that Mahoney has overcome any presumption of ownership that arose from the fact that his name was carried on the books of the corporation as a stockholder. See Finn v. Brown, 142 U.S. 56, 67, 12 S.Ct. 136, 35 L.Ed. 936.

We next pass to the question of liability of the defendant Karnow. At the time that the bank closed, the Karnow note was not a receivable in the hands of the receiver, it having previously been discharged by the bank's acceptance of the Greaney note in May of 1931. Likewise, Karnow was not a stockholder in the bank at the time that it closed its doors—his stock certificate having been surrendered in May, on the strength of which a new certificate was issued to Greaney standing in the name of Mahoney. The Karnow transfer of stock I find to have been in fact an out-and-out transfer made in good faith, and not under apprehension of the failing condition of the bank. See Germania National Bank of New Orleans v. Case, 99 U.S. 628, 25 L.Ed. 448. In all his actions Karnow shows clearly that the registration of the stock in his name was never intended to be a purchase by him of the stock, but was only for the accommodation of the bank. In any event, he divested himself of whatever title he had, long before the bank failed.

Passing to the defendant Greaney, I find an entirely different situation prevailing. It must be borne in mind that Greaney was a director of the old Boston bank as well as of the new Boston-Continental, and, as such, is chargeable with a higher degree of responsibility than either Karnow or Mahoney. The fact that he may have agreed with Ragan that he would stand exactly in Karnow's shoes when he took over the Karnow obligation cannot affect the fact that he was a director of the bank, that he had a more intimate knowledge of the transaction than either Karnow or Mahoney, and that he owed a duty to the depositors of the bank to protect their interests. What may have

been a legitimate activity for Karnow was not a legitimate one for Greaney. On his own story, he was involved in a scheme, the purpose of which was to deceive the national bank examiners, and to conceal a violation of the National Banking laws. It is quite true that Karnow had participated in this matter, but he did so as an outsider, and owed no duty to the depositors of the bank. Karnow also extricated himself from the entire situation seasonably, and did so under circumstances which lead this Court to believe that he did it in good faith and without apprehension of the failing condition of the bank. Greaney cannot establish his immunity from liability on this note by a claim that he stands on an equal footing with Karnow. See Lyons v. Westwater, 3 Cir., 181 F. 681; Westwater v. Lyons, 3 Cir., 193 F. 817. The reasoning in this case seems also to fix the liability for stock assessment squarely on the shoulders of Greaney. As between Greaney and Mahoney, there can be no doubt that Greaney had the title to this stock for Mahoney had no knowledge that his name was even being used in the transaction. As between the bank and Greaney, prior to the bank's closing of its doors, there might be some question of the right of the bank to insist that Greaney was the owner of that stock. As between the receiver, who stands in the shoes of the creditors, the depositors, and the general public, Greaney is estopped to deny the ownership of the stock on the reasoning of Lyons v. Westwater, supra. He had held himself out to the public, to the bank examiners, to the Comptroller of the Currency, and to the depositors of the Boston-Continental as an owner of stock either in his own name or in the name of Mahoney. To now be allowed to retract these representations would effect a fraud on all the parties. I therefore find and rule that Greaney is liable for the stock assessment claimed by the plaintiff. I therefore find and rule that the defendant Greaney is liable to the plaintiff on his note in the sum of $14,553.66 with interest.

A decree may be submitted in accordance with the above.