DEITRICK, RECEIVER, *v.* GREANEY.

No. 246. Argued January 10, 1940.—Decided February 12, 1940.

*Mr. George P. Barse,* with whom *Messrs. Brenton K. Fisk, Andrew J. Aldridge, James Louis Robertson,* and *David B. Hexter* were on the brief, for petitioner.

*Mr. David Stoneman,* with whom *Mr. Thomas H. Mahoney* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The question to be decided is whether a receiver of a national bank may compel payment of a promissory note knowingly given to the bank by one of its directors as a substitute, among its assets, for shares of its own stock

illegally purchased and retained by the bank but with the understanding that it was to retain its interest in the stock and that the note was not to be paid.

Petitioner, receiver appointed by the Comptroller of the Currency for the Boston-Continental Bank, a national banking association, brought suit against respondent, a director of the bank, and others, in the District Court for Massachusetts to collect an assessment upon shares of stock in the insolvent bank and to recover on respondent's promissory note, found by the receiver among its assets.

The trial court found that the Boston National Bank, predecessor of the insolvent bank, had acquired by purchase, 190 shares of its outstanding capital stock in violation of R. S. § 5201, 12 U. S. C. § 83, which declares that "no association shall . . . be the purchaser or holder of any such shares"; [1] that respondent as a means of concealing the illegal acquisition of the stock and of enabling the bank to retain its ownership of the stock, prevailed upon his co-defendant Karnow to execute an accommodation note, payable to the bank, the proceeds of which were deposited in another bank to the credit of respondent who then paid them to the Boston National Bank for the 190 shares of stock which were then transferred to the respondent on the books of the bank.

Following a renewal of the Karnow note respondent transferred the shares to him on the books of the bank

---

[1] "No association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; or, in default thereof, a receiver may be appointed to close up the business of the association, according to section fifty-two hundred and thirty-four [12 U. S. C. § 192]."

and upon consolidation of the Boston with the Continental National Bank, to form the Boston-Continental National Bank of which petitioner later became receiver, new shares of the consolidated bank were issued in exchange for the old. Part of them were sold and the proceeds used in reduction of the Karnow note. Respondent then gave to the bank his own note for the balance, in substitution for Karnow's note, and caused the remaining shares to be transferred to the name of Mahoney, also a defendant in the suit, without informing him of the transfer.

The court found that the entire transaction was devised and carried out by respondent for the purpose of concealing the bank's ownership of the stock by ostensibly removing the shares of stock from its assets and carrying the successive notes in their stead as receivables on the books of the bank with a secret agreement that the stock should be held for the Boston and later for the Boston-Continental Bank without liability on the part of the maker of the note. The court found liability of respondent for the assessment upon the shares held by Mahoney for his account, concluded that he was estopped to deny liability on the note and decreed accordingly that respondent alone should pay the stock assessment and the amount due on the note, 23 F. Supp. 758.

The Court of Appeals for the First Circuit reversed so much of the decree as allowed recovery on the note. 103 F. 2d 83. It confirmed the findings of the trial court. But it held that the circumstances which they detailed did not preclude the defense of want of consideration to the demand of the receiver, more than to that of the bank itself.

We granted certiorari, 308 U. S. 535, on petition of the receiver because of the public importance of the question in the administration of the National Bank Act and of the conflict of the decision below with that of the

194

Court of Appeals for the Fourth Circuit, in *Federal Reserve Bank* v. *Crothers,* 289 F. 777, and that of the Fifth Circuit in *Bohning* v. *Caldwell,* 10 F. 2d 298.

The National Bank Act constitutes "by itself a complete system for the establishment and government of National Banks." *Cook County National Bank* v. *United States,* 107 U. S. 445, 448. In addition to the sections of the Act conferring on national banking associations the authority to conduct a public banking business the Act contains numerous provisions designed for the protection of the bank's depositors and other creditors. It establishes minimum requirements for the amount of capital with which a bank may begin business, R. S. § 5138, 12 U. S. C. § 51, and makes special provisions for securing the payment into the bank of the authorized capital, R. S. §§ 5140, 5141, 12 U. S. C. §§ 53, 54. It prohibits the purchase by a bank of its own shares of stock and their retention when purchased, R. S. § 5201, 12 U. S. C. § 83. Impairment of capital of an association through its withdrawal by payment of dividends or otherwise is prohibited, R. S. § 5204, 12 U. S. C. § 56. Any bank whose capital has become impaired is required under direction of the Comptroller to make up the deficiency by assessment of its shareholders and in the event of its failure to do so a receiver may be appointed to wind up its business, R. S. § 5205, 12 U. S. C. § 55.

To insure performance of these duties and as a safeguard to creditors and the public, violation of the provisions of the Act by any director or officer of the bank or by any person aiding or abetting him, is made a criminal offense, R. S. § 5209, 12 U. S. C. § 592, and in the event of such a violation, the association may be required to forfeit all its rights and privileges, R. S. § 5239, 12 U. S. C. § 93. Further, by R. S. § 5240, 12 U. S. C. §§ 481, 484, the Comptroller of the Currency is required to ap-

point examiners who shall examine the affairs of every bank at least twice in each calendar year with power to administer oaths and examine officers and .agents of the bank under oath and who "shall make a full and detailed report" of the bank to him. By R. S. § 5211, 12 U. S. C. § 161, every association is required to make to the Comptroller of the Currency not less than three reports each year exhibiting in detail and under appropriate heads the resources and liabilities of the association, and the Comptroller is given power to call for special reports whenever, in his judgment, the same are necessary in order to obtain a full and complete knowledge of the condition of the reporting bank.

The obvious purpose of prohibiting the purchase by a bank of its own stock is to prevent the impairment of its capital resources and the consequent injury to its creditors in the event of insolvency. The provisions of the Act requiring periodic examinations and reports and the powers of the Comptroller are designed to insure prompt discovery of violations of the Act and in that event prompt remedial action by the Comptroller. These purposes would be defeated and the command of the statute nullified if a director or officer or any other by his connivance could place in the bank's portfolio his obligation good on its face, as a substitute for its stock illegally acquired, and if he remained free to set up that the obligation was, in effect, fictitious, intended only to aid in the accomplishment of the injury at which the statute is aimed.

Here, respondent, with full knowledge of the unlawful purpose to conceal the presence of the stock among the bank's assets, gave in exchange for it, first another's note and then his own, knowing that it was to be availed of as an apparently valid and lawful asset so as to forestall the remedies available under the statute for the unlawful

purchase. The notes were thus carried as receivables on the books of the bank for a period of more than two years, respondent's own note or renewals of it being lodged with the bank from May 4, 1931 until the bank closed its doors in December, 1931.

If the matter were of importance we could not assume, in the absence of proof, that the bank examiners did not perform their statutory duty or that respondent's note was not as it was intended to be the effective means of concealing the impairment of the bank's capital structure and preventing resort to the remedies for it which the statute affords. But it is enough for present purposes that the respondent, after placing his note among the bank's receivables in substitution for the shares of stock, as the means of avoiding the consequences of violation of the statute, may not now take the benefit of the secret and illegal agreement that his note except for purposes of deceiving the bank examiners was to be regarded as a nullity. If respondent were free to set up the unlawful agreement as a defense and thus cast the loss from the unlawful stock purchase on the creditors of the bank in receivership, he would be enabled to defeat the purpose of the statute by taking advantage of an agreement which it condemns as unlawful. That, we think, the law does not allow.

It is a principle of the widest application that equity will not permit one to rely on his own wrongful act, as against those affected by it but who have not participated in it, to support his own asserted legal title or to defeat a remedy which except for his misconduct would not be available. See *United States* v. *Dunn,* 268 U. S. 121, 133; *Independent Coal & Coke Co.* v. *United States,* 274 U. S. 640, 648. Applied in cases like the present, the rule that the illegal agreement may not be set up to defeat the obligation of the note is sometimes denominated an

equitable estoppel.[2]  *Lyons* v. *Westwater,* 181 F. 681; 193 F. 817; *Federal Reserve Bank* v. *Crothers,* 289 F. 777; *Bohning* v. *Caldwell,* 10 F. 2d 298; cert. den., 271 U. S. 663; *Utley* v. *Clarke,* 16 F. Supp. 435; *Iglehart* v. *Todd,* 203 Ind. 427; 178 N. E. 685; *Denny* v. *Fishter,* 238 Ky. 127; 36 S. W. 2d 864; *Prudential Trust Co.* v. *Moore,* 245 Mass. 311; 139 N. E. 645; *Longley* v. *Coons,* 244 App. Div. 391; 280 N. Y. S. 17; aff'd 268 N. Y. 712; 198 N. E. 571; *Bay Parkway Nat. Bank* v. *Shalom,* 270 N. Y. 172; 200 N. E. 685; see *First National Bank* v. *Smith,* 132 Pa. Super. 73; 200 A. 215.

In a strict and technical sense an estoppel arises only when a misrepresentation has prejudiced another who has relied upon it.  For that reason courts have sometimes held that one in the position of respondent is not estopped to set up the agreement against the bank or the receiver either because it did not appear that the bank was deceived by the concealment and misrepresentation or because injury to creditors was not shown to have resulted from them, cf. *Peterson* v. *Tillinghast,* 192 F. 287; *Cutler* v. *Fry,* 240 F. 238; *First State Bank* v. *Morton,* 146 Ky. 287, 293; 142 S. W. 694; *Quincy Trust Co.* v. *Woodbury,* 1938 Mass. Adv. Sh. 475; 13 N. E. 2d 377; *Agricultural Credit Corp.* v. *Scandia American Bank,* 184 Minn. 68; 237 N. W. 823.

---

[2] In a number of cases it has been held that the indirect benefit of the transaction to the obligor as a creditor or shareholder of the bank is sufficient consideration to support recovery.  See *New* v. *Page,* 144 Md. 606; 125 A. 403; *Hurd* v. *Kelley,* 78 N. Y. 588; *State ex rel. Lattanner* v. *Hills,* 94 Ohio St. 171; 113 N. E. 1045; *First National Bank* v. *Boxley,* 129 Okla. 159; 264 P. 184; *Arthur* v. *Brown,* 91 S. C. 316; 74 S. E. 652.  But whether the liability is sustained on this ground or that of estoppel it is apparent that the statutory policy of protection to creditors underlies both.  See Brannan, Negotiable Instruments Law (6th ed.) 459.

But stated more precisely, the doctrine with which we are now concerned is not strictly that of estoppel as thus defined. It is a principle which derives its force from the circumstances that respondent's act, apart from its possible injurious consequences to creditors, is itself a violation of the statute; and that the statute, read in the light of its purposes and policy, precludes resort to the very acts which it condemns, as the means of thwarting those purposes by visiting on the receiver and creditors whom he represents the burden of the bank's unlawful purchase. *Pauly* v. *O'Brien*, 69 F. 460; *Niblack* v. *Farley*, 286 Ill. 536; 122 N. E. 160; *Iglehart* v. *Todd, supra,* 442; 178 N. E. 685; *Cedar State Bank* v. *Olson*, 116 Kan. 320, 323; 226 P. 995; *Denny* v. *Fishter, supra; Parker* v. *Parker*, 287 Mich. 49; 282 N. W. 897; *German-American Finance Corp.* v. *Merchants' & Mfrs. State Bank,* 177 Minn. 529; 225 N. W. 891; *Vallely* v. *Devaney*, 49 N. D. 1107; 194 N. W. 903; *Bay Parkway Nat. Bank* v. *Shalom, supra; Mount Vernon Trust Co.* v. *Bergoff*, 272 N. Y. 192 196; 5 N. E. 2d 196; *Putnam* v. *Chase*, 106 Ore. 440; 212 P. 365. See *Schmid* v. *Haines*, 115 N. J. L. 271; 178 A. 801. Williston on Contracts (Rev. ed.) § 1632; Zollman, Banks and Banking, § 4783.

Since it is by virtue of the statute that respondent's agreement is unlawful and that the benefit of it as a defense to the note is denied; and as the purpose of the statute is to protect creditors of the bank from the hazard of violations of the Act like the present, it is immaterial that the bank's officers were participants in the illegal transaction, *Texas & Pacific Ry. Co.* v. *Pottorff*, 291 U. S. 245; *City of Marion* v. *Sneeden*, 291 U. S. 262; *Awotin* v. *Atlas Exchange National Bank,* 295 U. S. 209, or that the receiver has not shown that the creditors have been deceived or specifically injured as the result of the illegal contract. Cf. *Mount Vernon Trust Co.* v. *Bergoff, supra,* 196. It is the evil tendency of the prohibited acts at

which the statute is aimed, and its aid, in condemnation of them, and in preventing the consequences which the Act was designed to prevent, may be invoked by the receiver representing the creditors for whose benefit the statute was enacted.

*Rankin* v. *City National Bank,* 208 U. S. 541 and *Deitrick* v. *Standard Surety Co.,* 303 U. S. 471, on which respondent relies, do not call for any different conclusion. Because of certain statements *obiter* in the opinion in the *Rankin* case, it has been taken as controlling in a number of cases resembling the present, by the Court of Appeals for the Eighth Circuit,[3] and in one case in the Sixth Circuit.[4] In cases already cited, Courts of Appeals in other circuits have reached a different conclusion. It was to resolve this conflict that we granted certiorari. The *Rankin* case was tried below and decided here upon the concession of counsel that the transaction involved was not illegal, 208 U. S. 547. Here it is the reach of the statute making respondent's acts illegal and affording protection from them to the creditors which governs our decision.

In the *Deitrick* case, suit was brought against a surety company, on its surety bonds, by a bank's receiver not alleged to represent any innocent creditors who were injured because of their reliance on the bond. The company's agent, as alleged and as found by the two courts below, had, to the knowledge of the bank's president, executed and delivered the bonds to the bank without consideration and without the company's knowledge or authority, all in collusion with the bank's officers in a fraudulent conspiracy to deceive the bank examiner. The

---

[3] *Yates Center National Bank* v. *Schaede,* 240 F. 240, 241; *Hookway* v. *First National Bank,* 36 F. 2d 166; *Andresen* v. *Kaercher,* 38 F. 2d 462. Cf. *Cutler* v. *Fry,* 240 F. 238; *Keyes* v. *First National Bank of Aberdeen,* 20 F. 2d 678.

[4] *Peterson* v. *Tillinghast,* 192 F. 287.

company insisted that as it was the innocent victim of its agent's unauthorized acts in carrying out the conspiracy it could not be charged with responsibility for them on the theory of estoppel or of its own participation in the illegal transaction. Because of this state of the pleadings and of the record, the court found itself unable to hold that the National Bank Act imposed liability on the surety company. The decision of this Court was rested specifically, as was that of the Circuit Court of Appeals below, on the ground that the pleadings had limited the receiver's demand to the right of the bank to recover upon the bond procured by the fraud of its officers. This was shown, the Court declared, by the failure of the pleadings to allege any wrongful act for which the company was chargeable or which was injurious to creditors. It said, page 480, that the receiver "makes no suggestion of a purpose attributable to the company to mislead creditors or others, makes no allegations of damage except that sustained by the bank. He sets up no facts which could render unconscionable a denial of liability upon the bond because of the agent's fraud obviously induced by the president of the bank." We did not decide that in an action against one who, like respondent, is alleged and proved to be a participant in the illegal transaction, he can be heard to set up the defense of his illegal action to defeat the statutory policy aimed at the protection of creditors.

A point much discussed in brief and argument, upon the assumption that local law will guide our decision, see *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, is whether, by Massachusetts law respondent is precluded from setting up the illegality of the transaction as a defense to his note. But it is the federal statute which condemns as unlawful respondent's acts. The extent and nature of the legal consequences of this condemnation, though left by

the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has adopted, see, *Board of County Commissioners of Jackson County* v. *United States,* 308 U. S. 343, and cases cited. We have recently held that the judicial determination of the legal consequences which flow from acts condemned as unlawful by the National Bank Act involves decision of a federal, not a state question. *Awotin* v. *Atlas Exchange National Bank, supra.*

*Reversed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

MR. JUSTICE ROBERTS, dissenting:

I think the judgment should be affirmed on the authority of *Deitrick* v. *Standard Surety & Casualty Co.,* 303 U. S. 471, decided March 28, 1938. That case followed and reaffirmed the principle announced in *Rankin* v. *City National Bank,* 208 U. S. 541, that where the receiver of a national bank sues to recover on a chose in action which was an asset of the bank, his rights rise no higher than those of the bank, even though the obligation was given to deceive creditors or the bank examiner. The doctrine of the *Rankin* case has been applied in suits by receivers of national banks for more than thirty years.[1]

*Deitrick* v. *Standard Surety & Casualty Company* is on all fours with the present case. There the very argu-

---

[1] *Peterson* v. *Tillinghast,* 192 F. 287, 289; *Skud* v. *Tillinghast,* 195 F. 1, 5; *Cutler* v. *Fry,* 240 F. 238; *Yates Center National Bank* v. *Schaede,* 240 F. 240; *Keyes* v. *First National Bank,* 20 F. 2d 678, 686; *Hookway* v. *First National Bank,* 36 F. 2d 166, 170; *Kaercher* v. *Citizens' National Bank,* 57 F. 2d 58; *Varden* v. *First Christian Church,* 13 F. Supp. 159, 161; *Drake* v. *Moore,* 14 F. Supp. 89, 90; *Seaborn* v. *Reno National Bank,* 20 F. Supp. 835, 838; *Federal Deposit Ins. Corp.* v. *Pendleton,* 29 F. Supp. 779, 781.

ments and authorities now relied upon and cited on behalf of this petitioner were pressed without avail.

In the earlier case the same receiver brought actions at law to recover on surety bonds as assets of the bank. The facts were that the bank held worthless notes, known to its president to be such. To give a false appearance of worth to these assets he conspired with the agent of a surety company to procure surety bonds guaranteeing payment of the notes, to be used as "window dressing" and to be shown to the bank examiners if they should ask to see the collateral for the notes. The bank was afterwards examined and, as a result of the examiners' report, additional capital was subscribed. We may assume they saw the bonds. The bank remained open for a period and deposits continued to be made. Later the Comptroller determined the bank was insolvent and a receiver was appointed.

In his declaration in each action the receiver alleged his appointment, recited the execution and delivery of the surety bond to the bank and attached a copy of it. He alleged that the note or notes in question in each case was or were in default and that the surety was liable according to the terms of its bond. The surety company answered in each case setting up that no consideration was paid for the giving of the bond and that it was agreed and understood that no liability was to ensue from the execution and delivery.[2]

The District Court entered judgment for the surety company and the Circuit Court of Appeals affirmed.[3] That court, after stating that the knowledge of the president was the knowledge of the bank, held that the receiver

---

[2] The surety company also filed bills seeking cancellation of each of the bonds and, in his answers, the receiver reiterated his averment that the surety company owed him the amounts stipulated in the bonds, and asked judgment for such amounts.

[3] 90 F. 2d 862.

was not an agent of the bank's creditors; that he stood in no better position than the bank; that all defenses open to the surety company as against the bank were open as against the receiver; that the suit was merely one to recover assets of the bank and that the declarations stated no cause of action other than that arising from the contract of suretyship. The court called attention to the fact that the pleadings contained no allegation that the receiver based his action on any alleged deception of, or injury to, creditors of the bank and no allegation that the receiver was suing on behalf of creditors, and held that, upon the pleadings, it was not open to the receiver to urge that he represented creditors. It refused to decide whether, on different pleadings, the receiver could recover if he alleged and proved injury resulting to creditors from the transaction.

This court affirmed the judgment on the grounds stated by the court below, citing and relying on *Rankin* v. *City National Bank, supra.*

The surety also pleaded that its agent had exceeded his authority in issuing the bonds, as the bank's president knew. The Circuit Court of Appeals did not pass upon this defense, since it held the receiver could not recover even if the surety company had authorized the giving of the bonds. In the opinion of this court, the surety's contention that it was not bound by its agent's unauthorized act was mentioned but was not considered or discussed as a ground of decision. The sole basis of the decision is stated as follows:

"An examination of the pleadings makes it quite clear that the Receiver undertook to set up rights acquired by the insolvent bank through duly executed contracts between it and the Surety Company. He makes no suggestion of a purpose attributable to the company to mislead creditors or others; makes no allegations of damage except that sustained by the bank. He sets up no facts

which would render unconscionable a denial of liability upon the bond because of the agent's fraud obviously induced by the president of the bank. In this state of the pleadings the Receiver may not have judgment; he cannot rely on something not complained of, nor can he have damages because of supposed deceptions which the pleadings fail to suggest."

After so stating the court refers to the *Rankin* case and says: "We adhere to the doctrine there approved and regard it as decisive of the present cause."

Turning to the instant case, the facts are these: The bank had acquired shares of its own stock illegally. Such shares, so held, were inadmissible assets. The bank's president, knowing that such acquisition of its own stock was an illegal dissipation of its capital, worked out an ostensible sale of the stock for a note which it was understood was to be placed amongst the assets of the bank for the purpose of deceiving the examiners. The note was without consideration and the understanding was that it would not be collected. It was, of course, unenforceable by the bank. Subsequently deposits were made in the bank. It does not appear that the examiners saw the note. After the Comptroller had found the bank insolvent and appointed a receiver, that officer filed a bill against the maker of the note, first, to collect an assessment from him as owner of the stock and, second, to recover the face amount of the note, with interest. In this bill he alleged his appointment as receiver, the acquisition of the stock by the bank, and the placing of it in straw names, the giving of the note for the purchase price of the stock; and claimed "the unpaid principal amount of said note . . . together with interest thereon, is due the plaintiff . . ." His prayers were for a decree for the amount of the assessment and for the principal amount, with interest, of the note.

The answer outlined the true transaction, asserted that the defendant's note was an accommodation note, that no

consideration passed for it, and there could, therefore, be no recovery upon it.

The District Court entered a decree for the amount of the assessment and for the principal of the note with interest. The Circuit Court affirmed as to the assessment but reversed the judgment upon the note.

Here, as in the earlier case, there was no allegation that any creditors were deceived; none of any loss to the creditors resulting from the giving of the note; none that the receiver sued on behalf of creditors, and no cause of action asserted save one to recover upon the note as an asset of the bank. Here, as in the earlier case, the receiver has urged upon this court that he does represent creditors; that the public policy evidenced by the National Bank Act disables the defendant, in view of the intended deception, from asserting the lack of consideration for the note. Here, in contrast to the earlier case, the court accepts the view which was there rejected because not within the issues tendered.

In *Deitrick* v. *Standard Surety & Casualty Co., supra,* the receiver urged upon this court the very contentions which he again advanced in the instant case; cited in support of those contentions numerous authorities which he now cites, which are relied upon in the opinion now announced; sought to have this court adopt the proposition, now affirmed by the opinion in the present case, that the defendant was liable on the surety bond because of the public policy evidenced in the National Bank Act which, broadly speaking, estopped the surety to set up, as against the receiver, appointed pursuant to the national banking law, a wrong against that law in which it had participated.[4] His contentions were held to be unavailing in view of the cause of action he had pleaded.

---

[4] Out of sixty-eight pages of argument in petitioner's brief thirty-nine were devoted to this contention; and every proposition now relied upon to sustain the conclusion of the court was advanced in that brief.

In view of what has been said, it is apparent that, under the guise of distinguishing the earlier case, the court in fact overrules it.

MR. JUSTICE McREYNOLDS joins in this opinion.