## YOUNG *v.* WIERENGA.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   On appeal from directed verdict for defendant, plaintiff's proofs must be taken as true.

2. WAR—ACTION—TREBLE DAMAGES FOR OVERCHARGE UNDER EMERGENCY PRICE CONTROL ACT—USE OR CONSUMPTION OTHER THAN IN COURSE OF TRADE OR BUSINESS.
   One who seeks treble damages for overcharge under the emergency price control act must allege and prove that the goods purchased were for use or consumption other than in the course of trade or business (50 USCA, App. § 925 [e]).

3. Pleading—Statutes—Negativing Exception.

Where cause of action is based solely upon a fact that is stated as a statutory exception, a declaration which fails to negative the exception would not state a case.

4. Same—Overcharge Under Emergency Price Control Act—Negativing Exception.

A buyer who buys a commodity above ceiling price as established under the emergency price control act "for use or consumption other than in the course of trade or business" must negative the exception in his declaration in order to recover the overcharge as a buyer who buys "in the course of trade or business" is *in pari delicto* (50 USCA, App. § 925 [e]).

5. War—Commodity Ceiling Price—Treble Damages for Overcharge—Amendment of Declaration.

Plaintiff, seeking treble damages from person who charged him more than the ceiling price for a used automobile, but failing to allege that he had purchased the car for use "other than in the course of trade or business," would be permitted to amend the declaration if the question were raised and leave to amend were requested as the declaration failed to state a cause of action on account of such omission (50 USCA, App. § 925 [e]; 3 Comp. Laws 1929, § 14144 *et seq.*).

6. Same—Purchase of Commodity Other Than in Course of Trade or Business—Evidence—Question of Fact.

In action for treble damages for overcharge on used car, evidence presented an issue of fact as to whether or not plaintiff had purchased it other than in the course of trade or business (50 USCA, App. § 925 [e]).

7. Appeal and Error—Questions Reviewable—Amicus Curiae.

Issues of a case are controlled by the parties thereto and Supreme Court only considers issues raised by the parties, not new ones presented by brief of *amicus curiae*.

8. War—Ceiling Price—Buyer's Knowledge of Violation.

Mere knowledge by the buyer of a commodity subject to a ceiling price fixed by the office of price administration that the seller was charging more than the ceiling price does not make the buyer *in pari delicto* with the seller, nor does such knowledge bar recovery (50 USCA, App. § 925 [e]).

9. Same—Ceiling Price—Treble Damages—Evidence.

Proofs failed to establish that buyer of used car at more than ceiling price established by office of price administration led or induced seller to violate the law where evidence shows buyer

knew sale was for more than ceiling price and admittedly sought to obtain the car at the ceiling price but his recovery of any damages would not be defeated by his alleged scheme to enrich himself through payment of the excessive price demanded where he learned of treble-damage provision after the transaction was completed (50 USCA, App. § 925 [e]).

10. SAME—SALE OF COMMODITY FOR MORE THAN CEILING PRICE—DAMAGES.

Under the emergency price control act, the right of a buyer of a commodity at more than the ceiling price as established by the office of price administration to recover the excess is not definitely fixed at treble damages but "not more than three times the amount of the overcharge * * * as the court in its discretion may determine" (50 USCA, App. § 925 [e]).

11. NEW TRIAL—EXCESSIVE VERDICT—REMITTITUR.

An excessive verdict is always subject to a remittitur or the granting of a new trial.

12. WAR—CEILING PRICES—DAMAGES—DISCRETION OF COURT.

In an action to recover damages for sale of commodity in violation of ceiling price established under the emergency price control act, a court is lodged with discretion to enter a judgment, the minimum amount of which is the overcharge with a maximum amount of three times thereof, or an amount not less than $25 or more than $50, whichever sum is the greater, except where defense of lack of wilfulness has been established, and in such case the court has no discretion but to enter a judgment for the minimum amount, that is, the overcharge or $25, whichever is the greater (50 USCA, App. § 925 [e]).

Appeal from Kent; Verdier (Leonard D.), J. Submitted January 9, 1946. (Docket No. 39, Calendar No. 43,243.) Decided April 1, 1946.

Action by Willard R. Young against Peter Wierenga for treble damages for sale of automobile in excess of ceiling price. Cross action by defendant against plaintiff for damages for humiliation. Directed verdict and judgment of no cause of action. Plaintiff appeals. Reversed and new trial granted.

*George D. Stribley,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant.

*George Moncharsh,* Deputy Administrator for Enforcement; *Milton Klein,* Director, Litigation Division; *David London,* Chief, Appellate Branch; *Nathan Siegel,* Special Appellate Attorney; and *Samuel J. Weiner,* Regional Litigation Attorney; for Office of Price Administration, *amicus curiae.*

Boyles, J. Plaintiff purchased an automobile from the defendant, a used-car dealer, and paid $1,625 for the same, which sum was $720 in excess of the maximum price fixed for the sale of said automobile by the office of price administration (OPA) under authority of the Federal emergency price control act of 1942, as amended.* Plaintiff then brought the instant suit for $2,160, treble damages, under said act. The case came up for trial by jury, and at the close of plaintiff's proofs, on motion the court directed a verdict for the defendant. From the judgment entered thereon plaintiff appeals. The ground on which the trial court relied in directing a verdict for the defendant was announced by the court as follows:

"This is a case where Mr. Young knew that the ceiling price of the car was $905 and with that knowledge and with the aid and assistance of an arm of the United States government, he goes out to this used car dealer and pays him money and now seeks to enrich himself by recovering damages for a violation of the law in which he was an active participant.

"Now I do not think the law will countenance any such thing. He is just as guilty as the dealer who

* 56 Stat. at L. 23, as amended June 30, 1944 (58 Stat. at L. 632 [50 USCA, Appendix, § 901 *et seq.*]).

seeks an excessive price; he helped to make the price by agreeing to pay it. He is asking the law to enrich himself at the expense of the dealer. He, himself, is not only countenancing the violation of the law but he aided and abetted the violation and that is something I cannot comprehend. I cannot believe the law permits any such thing.''

The facts are not in dispute. Plaintiff's testimony (which under the circumstances must be taken as true) was as follows:

''I asked him (the defendant) about the price of this vehicle and he said it was $1,625. I told him that was a little steep. I said, 'What is the ceiling price on it, OPA ceiling price on it?' He said around $1,000. So I said, 'Well, I wouldn't give that much money for it.' 'Well,' he said, 'if you want it you are paying that much. If you don't pay that much, somebody else will.' So I went down—I went back to a residence here, to my mother-in-law, and got to thinking about it and so I went to the OPA and I asked them what the ceiling price was on that car and it was $1,031, which was the guaranteed ceiling price. $905 was a nonguaranteed ceiling price.

''I found out the OPA ceiling price and asked a representative from the OPA to go along with me when I made this purchase for the purpose of being able to obtain my overcharge back. Roscoe Reams (an investigator in the employ of the OPA) went along with me the next morning around 9 o'clock. That was the 12th of August, a Saturday.

''We went to the lot or station rather and stayed there and looked at a 1941 Chevrolet two-door and Mr. Wierenga had before mentioned it was a car which would not cost so much money. He wanted a price of $1,400 on it and the ceiling on that car also is only around in the vicinity of $1,000. He did not tell me what the ceiling was, but I looked it up afterwards. So I said, 'I will try the car out anyway,'

and so I did. Mr. Reams and myself went around the block or so but it wasn't up to the other car I had tried out before, the Pontiac. So I said, 'No,' I said 'I am still interested in the Pontiac.' And I said, 'Would you tell me again what the price of this automobile is?' He said $1,625. I said, 'All right.' So we went inside and the transaction then was I counted out $1,625 * * * two $100 bills; 72 $20 bills; one $10; one $1 and one 25-cent piece. I counted that money out and Mr. Reams, the OPA representative stayed between me and the dealer. I counted the money out again and found it to be correct and turned it over to the car dealer and the car dealer accepted it and counted it and said it was correct. * * * The sales tax was computed on only about eight hundred and some dollars and the reason for that on the eight hundred and some dollars was due to the statement of Mr. Wierenga at the time he couldn't charge me full sales tax because if he did it would be a dead give away as to what he sold the car for, what it was and would put him on the spot with the OPA. * * * I asked him for a receipt for the money. Mr. Reams was there at that time. He (Mr. Wierenga) said he wouldn't be able to give me a receipt for $1,625 because if I should lose it or the OPA should get hold of him, it would put both him and I on the spot. * * *

"The title was transferred to me, and I have the title of the automobile now. I still have the automobile and still use it."

The maximum price regulation of the OPA for the car in question was received in evidence without objection. It is not questioned but that the price paid by plaintiff for the car exceeded the maximum price regulation by $720. On cross-examination, plaintiff further testified:

"I am not a relative of Mr. Wierenga. I had worked at one time for the Fidelity Corporation of Muskegon. My termination was approximately the

middle of January, 1942. I was manager of Fidelity Corporation of Michigan. The Fidelity Corporation of Muskegon deals in financing automobiles and I am experienced in making loans on automobiles. I was acquainted with the prices of automobiles at that time when I referred to a book. * * * I went over there to see Mr. Wierenga and look at the Pontiac automobile. * * * I did offer him $1,400 for it the first day.. I knew at that time it was over the ceiling. I would not have paid that price for it. I did not take down the serial number of the car. I went to the OPA office that afternoon and checked the ceiling on the car. I knew about what car to check on from the model. I didn't have the serial number. * * * We took the serial number down after I—when I was ready to purchase the car the next day. I didn't copy any serial number down before I went to the OPA. I did the next morning. I checked the numbers with the OPA, and then found the ceiling price was $1,131 with—if it is guaranteed price, a nonguaranteed price including a heater $905. I knew where to put it, what the serial was, as it varies with serial numbers; they only make one club sedan six cylinders. I knew there was only one club sedan and I knew I had the correct rate in the rate classification. * * *

"I did not know Mr. Reams at that time, when I went there the first day. I did not get acquainted with him up there, not until the next morning. He is the representative that was supposed to go out with me that I had asked for. Late in the afternoon before I had asked to have a man go with me. I did that because I didn't feel anyone who would sell a vehicle with a book value in the vicinity of $1,100 would willingly give a receipt for a total of $1,625. So I wanted to take the OPA man with me, so I could get my money back, the overcharge. I knew that and that is the reason I took the man with me. I had made a previous arrangement for that the afternoon before. * * *

"My plan was to go there the next morning and if he would sell the car for $1,625 in front of the OPA man and give a receipt, I was going to do it. And then I was going to turn around and demand the return of the excess. That was my plan. * * * When I counted the money out, I counted it right out in bills in the presence of Mr. Reams and Mr. Wierenga, and handed the money over to Mr. Reams to count. He counted it. So there would be no question about if there was $1,625 paid.

"Naturally, I knew when I did that, that Mr. Wierenga was violating the law."

Plaintiff further testified that at the time he purchased the car he did not know about the regulation for recovering treble damages and first learned of it at the OPA office afterward.

Mr. Reams testified that he was instructed to go with plaintiff as a witness, by a superior in the OPA office, the enforcement attorney. After the purchase was made, plaintiff and Mr. Reams returned to the OPA office together. The United States district attorney filed an information in the United States district court, western district of Michigan, southern division, charging the defendant with having unlawfully sold the car in question for $1,625, in excess of the maximum price established by the OPA. Defendant was brought before the bar of the court, convicted on a plea of *nolle contendere,* and fined $300, which he paid.

It should be emphasized that the question in the instant case is whether plaintiff can recover any damages from the defendant for the violation of the OPA price regulation. More narrowly stated, the precise question is whether plaintiff was entitled to go to the jury on the issues and the testimony adduced by him. This is not an indictment of the OPA, or of its methods of enforcement. The

desirability, advisability or necessity for the OPA price regulations are not an issue here. Mr. Wierenga was brought into Federal court and paid the penalty for his knowingly and wilfully violating the law. There is no question but that the plaintiff knowingly participated in, aided and abetted the violation. Does that fact bar plaintiff from recovery?

The pertinent part of section 205 (e) of the emergency price control act (56 Stat. at L. 33, as amended June 30, 1944 [58 Stat. at L. 640 (50 USCA, Appendix, § 925 [e])]), under which provision this suit is bottomed, is as follows:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may * * * bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: *Provided, however,* That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation."

Under the foregoing provision the burden was on the plaintiff to allege and establish that he pur-

chased the automobile "for use or consumption other than in the course of trade or business."

In *Lightbody* v. *Russell*, 293 N. Y. 492 (58 N. E. [2d] 508), plaintiffs sued to recover treble damages based on the difference between the ceiling price and the actual purchase price of a tractor purchased by plaintiffs from the defendant. On review, in considering a motion to dismiss the case on the ground that plaintiffs had failed to state a cause of action, the court of last resort for New York said:

"The statute gives plaintiffs a cause of action in the circumstances set forth in the complaint only where the commodity is sold at a price in excess of the prescribed ceiling or maximum price and purchased by them 'for use or consumption other than in the course of trade or business.' They cannot bring the suit or successfully maintain a cause of action unless they allege and prove that they purchased the tractor for use or consumption other than in the course of their trade or business. That allegation and proof of the fact is a statutory condition to the cause of action. The statute contains the exception as the foundation of a cause of action and plaintiffs fail to state a case since they do not negative the exception. *People* v. *Bradford*, 227 N. Y. 45 (124 N. E. 118); 41 Am. Jur. §§ 92–94; 3 Carmody's New York Practice, § 928; Baylies Pleading with Practice and Forms, p. 74."

In *Dunakin* v. *Southwestern Consumers Cooperative Ass'n*, 49 N. M. 69 (157 Pac. [2d] 243), the Supreme Court of New Mexico said:

" 'Only a buyer who buys "for use or consumption other than in the course of trade or business" may bring an action under section 205 (e). A buyer who buys "in the course of trade or business" is equally guilty with the seller under section 4 (a) of the act, and being *in pari delicto* could not

maintain a treble damage action even in the absence of the statutory limitation.'

"On the basis of this suggestion, since the buyer 'in the course of trade or business' is not expressly authorized to bring an action and would by inference be precluded from doing so because of being *in pari delicto,* it is reasonable to suppose that the Congress, seeking to punish the seller of commodities in excess of ceiling prices did not intend to enlist the help of those who would be *in pari delicto,* such as informers, entrappers and those who sought to enrich themselves at the expense of those who violated the law either intentionally or unintentionally. In accordance with the expressions of the law writers heretofore quoted, it was thought that to enlist the help of consumers would be sufficient. To that end the Congress did not think it necessary to specifically exclude a buyer who buys 'in the course of trade or business,' and also a buyer who buys other than in the course of trade or business but not for use and consumption. The language of the provision was carefully chosen: 'The person who buys such commodity for use or consumption other than in the course of trade or business may bring an action, et cetera.' These words, creating a cause of action are words of exclusion as well as inclusion. Cf. *Thurman* v. *Grimes,* 35 N. M. 498 (1 Pac. [2d] 972), and *Atchison, T. & S. F. R. Co.* v. *State Corporation Commission,* 43 N. M. 503 (95 Pac. [2d] 676)."

We do not overlook the fact that there is no allegation in plaintiff's declaration that he purchased the automobile for use (or consumption) "other than in the course of trade or business." However, no question was raised in the trial court, nor is the question raised here, that the declaration failed to state a cause of action on account of such omission. Under such circumstances, and in view of the liberality allowed parties to amend their pleadings under

our statute of amendments,* the plaintiff would be permitted to amend the declaration if the question was raised and he so requested.

The record before us leaves a considerable doubt as to whether the plaintiff has established as a fact that he purchased the automobile for use other than in the course of trade or business. The only evidence tending to establish such fact is where plaintiff testified:

"My purpose in buying this automobile was for a family car."

While this testimony was admissible (*Dunakin* v. *Southwestern Consumers Co-operative Ass'n, supra*), it leaves an open question as to whether or not the purchase of the automobile was *also* for use in plaintiff's trade or business. On that issue, we note that the defendant, in a cross-declaration, alleged:

"That plaintiff falsely represented to the defendant that he needed said automobile for his business, and that he was a salesman and could not carry on his business without the use of an automobile."

In answering this allegation the plaintiff did not deny having made such representation, but limited himself in his answer to the cross-declaration by merely denying that he had made any "false" representations as to his desire or necessity for purchasing the automobile. The necessary inference from such pleadings is that plaintiff admitted that he purchased the automobile for use in his business as a salesman—*i.e.,* that the representation was true.

Under these circumstances we must conclude that there was an issue of fact, as to whether plaintiff

* 3 Comp. Laws 1929, § 14144 *et seq.* (Stat. Ann. § 27.838 *et seq.*).

purchased the automobile other than in the course of trade or business. If so, he brought his case within the quoted provision in section 205 (e). If not, he could not maintain his suit. A question of fact was raised which should have been submitted to the jury.

We do not overlook the fact that plaintiff's omission or concessions above referred to might be said to justify the action of the trial court in directing a verdict for the defendant. However, this question was not raised before the trial court, nor is it raised by the parties here. It is referred to only in an *amicus curiae* brief filed by the OPA. The issues are controlled by the parties in the case, and new issues raised by *amicus curiae* do not control.

"Although general leave was granted to file briefs as *amicus curiae*, in view of the fact that the issues are controlled by the parties to the case, the Supreme Court will not consider new issues raised in said briefs, but will consider only the issues raised by the parties." *Union Steam Pump Sales Co.* v. *Secretary of State* (syllabus); 216 Mich. 261.

"Issues of a case are controlled by the parties thereto and Supreme Court only considers issues raised by the parties, not new ones presented by brief of *amicus curiae*." *Lau* v. *Stack* (syllabus), 269 Mich. 396.

It is a fair inference, from the reason announced by the trial court for directing a verdict, that the court directed the verdict for the defendant on the ground that plaintiff was *in pari delicto* with the defendant, and that the plaintiff should not be allowed to enrich himself when it was shown that he was an active participant in the defendant's violation. However, mere knowledge by the purchaser that the defendant was charging more than the OPA

ceiling price for the automobile does not make the plaintiff *in pari delicto* with the seller, nor does such mere knowledge bar recovery. To so hold would largely nullify the purposes of the act and enable violators to escape civil liability under section 205 (e). In *Zwang* v. *A. & P. Food Stores,* 181 Misc. 375 (46 N. Y. Supp. [2d] 747), the plaintiff Zwang had purchased food for use or consumption and not "in the course of trade or business." The court said:

"Assuming that the plaintiff-consumer had knowledge at the time of paying the excessive charge that the defendant's ceiling price was illegal, that knowledge is no defense to a civil action for damages under the emergency price control act. There has always been a judicial aversion to aiding a malefactor in profiting from his own wrong. From this well-founded (a)version has sprung the doctrine that one who is himself a party to an illegal transaction may not obtain the aid of the courts but that, on the contrary, parties *in pari delicto* will be left in the situation in which they find themselves. This doctrine has no application to the case at bar. The consumer-purchaser commits no offense against the emergency price control act when he pays an excessive price. One who sells at a price higher than fixed by the regulation is the violator. One who buys at excessive prices is a violator only when the purchase is made 'in the course of trade or business.' In any event the plaintiff-consumer here was not guilty of any fraud; she had nothing to do directly or indirectly with the fixing of the illegal ceiling price by the defendant or its employees and cannot be considered *in pari delicto* with the violator of the statute."

See, also, *Rosenberg* v. *Hano* (C. C. A.), 121 Fed. (2d) 818; *Lewis* v. *Nailling,* 36 Fed. Supp. 187;

*Washington & C. R. Co.* v. *Mobile & O. R. Co.,* 166 C. C. A. 340 (255 Fed. 12); *Deitrick* v. *Greaney,* 309 U. S. 190 (60 Sup. Ct. 480, 84 L. Ed. 694); see, also, note in 120 A. L. R. at p. 1461.

The only proof in addition to the mere fact that plaintiff had knowledge of defendant's violation is that the plaintiff, having such knowledge, wilfully aided and abetted the defendant in violating the act by thereafter purchasing the automobile and paying a price in excess of the OPA maximum. But the proofs fail to establish that the plaintiff led or induced the defendant to violate the law. The defendant in substance told the plaintiff "that is my price —take it or leave it." Nor did the plaintiff thereupon concoct a scheme to unlawfully *enrich* himself by paying the excessive price demanded. His admitted purpose was to obtain the automobile at the ceiling price fixed by the OPA, by bringing suit to recover the difference between that amount and the amount he found it necessary to pay to defendant in order to obtain the automobile. At the time the transaction was completed plaintiff did not know that he might bring suit for three times the difference between these two amounts. He subsequently was advised of the provision in the act for treble damages by someone at the OPA office.

Obviously the trial court was influenced by a proper reluctance to allow the plaintiff to "enrich himself" through court action, by recovering treble damages. However, the act does not definitely fix the purchaser's right of recovery at treble damages. To repeat, section 205 (e) makes the seller liable for an amount *"not more than* three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine." The buyer may recover *not*

*more than* three times 'the amount of the overcharge, "as the court in its discretion may determine." An excessive verdict is always subject to a remittitur or the granting of a new trial. In that connection, see *Bowles* v. *Relkin,* 65 Fed. Sup. 419, Oct. 27, 1945 (quoting from headnote in Commerce Clearing House Quarterly, Vol. 3 Price Control Cases, # 52,409):

"Motion·by the price administrator for summary judgment in an action under section 205 (e) of the act is denied where the applicable price regulation is in question, and it is possible that defendant's good faith might be established on a trial. Further, the court points out that an award of actual treble damages rests largely in the court's own discretion."

The court said:

"Further under section 205 (e) of the emergency price control act [50 USCA, App. § 925 (e)] the amount of the judgment (after the amount of the overcharge on each sale has been judicially determined) need not be for treble damages. To a certain extent the amount of the judgment would be within the discretion of the trial judgè (section 205e). Said subsection (e) also adds:

" 'Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.'

"There are several important and basic issues of fact which should be disposed of at a trial before any judgment is entered herein. The motion for summary judgment is accordingly denied."

At the trial of the instant case the defendant was not afforded an opportunity to show that the violation was "neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation." Conceivably the defendant might make a showing in that regard contrary to the testimony of the plaintiff which would raise an issue of fact to be submitted to the jury, and thus have a bearing on the amount of a verdict.

"Thus, as we construe this section, the court in all cases is lodged with the discretion to enter a judgment, the minimum amount of which is the overcharge, with a maximum amount of three times thereof, or an amount not less than $25 or more than $50, whichever sum is the greater, except in the case where a defense has been established under the proviso and in such case the court has no discretion but to enter a judgment for the minimum amount that is the overcharge in one instance or $25 in the other." *Bowles* v. *Krodel* (C. C. A.), 149 Fed. (2d) 398, 401.

See, also, *Bowles* v. *Goebel* (C. C. A.), 151 Fed. (2d) 671.

For the reasons stated, the judgment is set aside and a new trial granted.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.